[No. F062983. Fifth Dist. Sept. 14, 2012.]

COALITION FOR CLEAN AIR et al., Plaintiffs and Appellants, v.
CITY OF VISALIA et al., Defendants and Respondents;
VWR INTERNATIONAL, LLC, Real Party in Interest and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., III., and V. of the Discussion.

**COUNSEL**

Lozeau Drury, Richard Drury, Christina Caro; Law Office of Sara Hedgpeth-Harris, Sara Hedgpeth-Harris; Richard M. Franco; and Brent Newell for Plaintiffs and Appellants.

Kamala D. Harris, Attorney General, Sally Magnani, Assistant Attorney General, Janill Richards and Lisa Trankley, Deputy Attorneys General, as Amicus Curiae on behalf of Plaintiffs and Appellants.

Dooley, Herr, Peltzer & Richardson, Leonard C. Herr and Ron Statler for Defendants and Respondents.

Drinker Biddle & Reath and Adam J. Thurston for Real Party in Interest and Respondent.

**OPINION**

**FRANSON, J.—**

## INTRODUCTION

A labor union, three public interest organizations, and an individual filed a lawsuit challenging the City of Visalia's (City) handling of VWR International, LLC's proposal to build a large distribution facility in Visalia. Plaintiffs alleged that the City's approval of the project violated the California Environmental Quality Act (CEQA)[1] and provisions of the Visalia Municipal Code regarding permits. They also contend that City's agreement to reimburse VWR International for street improvements associated with the new facility constituted an illegal expenditure of public funds because it violated a

---

[1] Public Resources Code, section 21000 et seq. All further undesignated statutory references are to the Public Resources Code unless otherwise indicated.

section of the Visalia Municipal Code prohibiting payments to developers. In addition, plaintiffs sought a writ of mandate against VWR International to compel its compliance with the San Joaquin Valley Air Pollution Control District (SJVAPCD) rules concerning air pollution from indirect sources.

The trial court sustained, without leave to amend, the demurrer of VWR International on the grounds that (1) the CEQA claim was time-barred by the applicable 35-day limitations period, (2) plaintiffs lacked standing to obtain a writ of mandate to compel City or VWR International to comply with permitting requirements of the Visalia Municipal Code or SJVAPCD, and (3) plaintiffs' claim that City authorized the illegal expenditure of public funds was an improper challenge to a discretionary funding decision. On appeal, plaintiffs contend the trial court erred in sustaining the demurrer.

We conclude that a notice of exemption filed *before* the final approval of a proposed project is invalid and does not trigger the 35-day statute of limitations set forth in section 21167, subdivision (d). Because plaintiffs have alleged that City approved the project after it filed the notice of exemption, and a demurrer admits the truth of the allegations pled, we cannot conclude at this stage of the proceedings that the 35-day limitations period applies and thus bars the CEQA claim. Therefore, the demurrer to the CEQA cause of action should have been overruled.

Also, we conclude plaintiffs' allegations that no building permits may be issued for the project without a planned development permit identifies a ministerial duty that City owes the public and that may be enforced by writ of mandate. Furthermore, plaintiffs have standing to enforce this ministerial duty.

Finally, as to plaintiffs' claim that City's reimbursement of VWR International for certain street improvements will be an illegal expenditure of government funds, we will grant plaintiffs leave to amend (1) to identify the specific mandatory provision of the Visalia Municipal Code that the reimbursements allegedly will violate and (2) to allege facts showing how the reimbursements will violate that provision.

We therefore reverse the judgment.

## FACTS AND PROCEEDINGS

*The Parties*

VWR International, a defendant and real party in interest in this litigation, is a global laboratory supply and distribution company, headquartered in Pennsylvania. VWR International proposed building a 500,000- to 750,000-square-foot supply and distribution facility on 32 acres of land located on West Riggin Avenue in Visalia, California. Plaintiffs allege the facility will supply a wide range of laboratory equipment and chemicals, "including solvents, salts, acids, and other highly toxic compounds."[2] In connection with the construction of the facility, improvements will be made to adjacent streets. (The facility and street improvements are collectively referred to as the "project.") Plaintiffs allege that when the new facility is open, VWR International plans to close older regional facilities in Brisbane, California; Aurora, Colorado; and San Dimas, California.

The plaintiffs in this lawsuit are (1) Coalition for Clean Air, (2) Center for Environmental Health, (3) Association of Irritated Residents, (4) Kevin Long, and (5) Teamsters Joint Council 7 (collectively plaintiffs).

Coalition for Clean Air is a California nonprofit corporation with over 300 members throughout the state. Coalition for Clean Air alleges it has seven members and one staff person who regularly breathe the air of Tulare County and surrounding areas and some of its members "will suffer injury in fact and economic harm as a result of the violations of law related to the VWR Project at issue in this action, including, but not limited to, diminution of property value due to excess air pollution and truck traffic, being forced to breathe heavily polluted air and suffer excess traffic congestion, [and] being exposed to significant risks from the handling, transportation and storage of highly toxic chemicals without proper safeguards."[3]

Center for Environmental Health is an Oakland-based California nonprofit corporation. Center for Environmental Health alleges that it is dedicated to protecting the public from environmental health hazards and toxic exposures.

---

[2] *Appellants' opening brief describes the project as a "massive new . . . diesel truck distribution facility . . . . [¶] . . . [that] will generate thousands of diesel truck trips each day, as well as related air pollution and construction emissions."*

[3] The injuries alleged by the individual plaintiff and by members or supporters of the other plaintiff organizations are word-for-word the same as those alleged to be suffered by members of Coalition for Clean Air.

It alleges that it has supporters who live near the proposed project and that these supporters will suffer injury as a result of violations of law related to the proposed project.

Association of Irritated Residents alleges that it is an unincorporated association that advocates for air quality and environmental health in the San Joaquin Valley. It further alleges that some of its members reside in Tulare County near the proposed project and they will suffer injury as a result of violations of law related to the proposed project.

Kevin Long alleges that he is a resident of Visalia, pays taxes in Visalia, lives in the vicinity of the proposed project, and will be directly and adversely affected by City's approval of the project. He also alleges he will suffer injury as a result of violations of law related to the proposed project.

Teamsters Joint Council 7 is a labor organization based in Oakland that alleges it has over 700 members who live, work and recreate in Visalia. It also alleges it has members who live near the proposed project and will be injured as a result of violations of law related to the proposed project. Teamsters Joint Council 7 alleges dozens of its members will lose their jobs at the facility in Brisbane when VWR International moves its operations to the unlawful proposed facility in Visalia.[4]

Besides VWR International, the other defendants in this lawsuit are SJVAPCD, City, its city council, site plan review committee, and a community development director.

SJVAPCD is an air quality control agency charged with promulgating rules and regulations to reduce air pollution in the San Joaquin Valley. Its jurisdiction covers eight counties, including Tulare County. SJVAPCD promulgated rule 9510, which sets forth its indirect source review program.[5]

---

[4] Respondent VWR International's brief alleges that the CEQA action was originally commenced by the Teamsters Union and one of its local officers, in an effort to halt construction of the Visalia facility, fearing that its completion as a nonunion facility would lead to the closure of a unionized facility in Brisbane.

[5] In *California Building Industry Assn. v. San Joaquin Valley Air Pollution Control Dist.* (2009) 178 Cal.App.4th 120 [100 Cal.Rptr.3d 204], we concluded that the district had the authority to adopt the indirect source review rules (i.e., rules 3180 & 9510) and that the fees imposed under those rules were valid regulatory fees. (178 Cal.App.4th at p. 124.) The purpose of rule 9510 is to reduce indirect sources of nitrogen oxides and particulate matter less than or equal to 10 microns in size. (178 Cal.App.4th at p. 127.)

*The Petitions and Complaints*

On December 28, 2010, Kevin Long and Teamsters Joint Council 7 filed a verified petition and complaint against City and VWR International. They also notified the Attorney General that the petition had been filed.

On February 1, 2011, a verified first amended petition for peremptory writ of mandate and complaint for declaratory and injunctive relief (FAP) was filed, containing eight causes of action, which included alleged violations of CEQA, the land use process of the Visalia Municipal Code, and SJVAPCD's rule 9510,[6] and illegal government expenditures.[7] The Coalition for Clean Air, Center for Environmental Health, and Association of Irritated Residents were added as plaintiffs.

*Allegations of the FAP*

In August 2010, VWR International announced that it intended to build its new distribution facility in Visalia. The proposed site was undeveloped land that had been farmed and was in a planned heavy industrial zone.

In September 2010, City's site plan review committee met to discuss the proposed project and determined that improvements to Riggin Avenue and the preparation of plans for grading and drainage, dust control, and landscaping were needed. At the meeting, the committee directed applicant VWR International to make at least 50 modifications to the proposed project.

Plaintiffs allege that because the project required modifications, the site plan review committee did not approve the proposed project or issue a planned development permit at the September 2010 meeting. Instead, the site plan review committee concluded that a revised plan addressing its comments and revisions must be submitted for off-agenda review and approval before submissions for building permits or discretionary actions. As a result, the site plan review committee and City staff processed all further permits and actions concerning the proposed project off agenda and there were no public notices or hearings for any further permitting actions.

---

[6] Rule 9510 generally requires implementation of site-specific measures to reduce emissions.

[7] Generally, the FAP's causes of action were as follows: (1) failure to review the project pursuant to CEQA; (2) failure to obtain a planned development permit required by the Visalia Municipal Code; (3) failure to obtain an indirect source permit required by SJVAPCD's rule 9510; (4) unfair business practice for failure to comply with SJVAPCD's rule 9510; (5) unfair business practice for failure to comply with the Hazardous Materials Response Plans Act; (6) illegal expenditure of public funds for street improvements related to the project; (7) additional CEQA violations; and (8) public and private nuisance.

In October 2010, the County of Tulare Resource Management Agency wrote to City urging it to conduct a CEQA review and determine whether the project complied with SJVAPCD rule 9510 for indirect source review.

On November 3, 2010, City filed a notice of exemption that described the project as the "construction of a new 500,499 sq. ft. building on 31.9 acres in the IH (Heavy Industrial) zone" and stated the project was a ministerial action statutorily exempt from CEQA. Plaintiffs allege that City's notice of exemption was filed "five days prior to the November 8, 2010 approval of the VWR Project." The topic of project approval is also addressed by plaintiffs' allegation that a letter from City's community development director, dated November 8, 2010, appears to be the first approval of the proposed project of any kind issued by City. That letter stated: "The revised site plan was submitted for off-agenda review by the committee on October 14, 2010. The Site plan review number 10-113 is approved as a Revise and Proceed to building permits and off-site civil improvement design drawings."

Later in November, district 6 of California's Department of Transportation sent City a letter stating (1) the project would have significant adverse impacts on traffic, (2) a traffic impact study would be required to determine the extent of the impacts and the mitigation needed to reduce the impacts to less than significant, and (3) the project would significantly impact three interchanges on State Route 99.

On December 10, 2010, City's city council exercised its discretion to approve reimbursing VWR International up to $1.5 million for the cost of street improvements associated with the proposed project. The city council authorized the city manager to approve and execute improvement and reimbursement agreements with VWR International. Those agreements are the basis for plaintiffs' sixth cause of action, which alleges City authorized the illegal expenditure of public funds. The improvements and expenditures are described in greater detail in an unpublished portion of this opinion, which discusses the sixth cause of action.

*VWR International's Demurrer*

On February 10, 2011, VWR International filed a demurrer to plaintiffs' FAP, contending (1) the CEQA claims were barred by the statute of limitations, (2) plaintiffs lacked standing to obtain a writ of mandate on the other

claims, and (3) the allegations of illegal government expenditures were insufficient to state a cause of action. City joined in this demurrer.

SJVAPCD did not join in the demurrer. Instead, SJVAPCD and plaintiffs entered a stipulated judgment, described in part IV of this opinion, which effectively resolved the claim against SJVAPCD in the third cause of action.

*Hearing and Order on the Demurrer*

On April 20, 2011, plaintiffs filed a request for dismissal without prejudice of their fourth, fifth, seventh and eighth causes of action. Thus, the April 26, 2011, hearing on the demurrer proceeded on the four remaining causes of action: the CEQA violations, the permit requirements in the Visalia Municipal Code, SJVAPCD rule 9510, and illegal government expenditures. At the end of the hearing, the court took the matter under submission.

On May 2, 2011, the trial court filed its written order, sustaining the demurrer on plaintiffs' remaining causes of action. The court concluded that (1) the CEQA cause of action was time-barred, (2) plaintiffs lacked standing to pursue the second cause of action concerning violations of permit requirements contained in the Visalia Municipal Code, (3) plaintiffs lacked standing to bring the third cause of action concerning VWR International's alleged violation of SJVAPCD's rule 9510, and (4) the illegal expenditure of government funds alleged in the sixth cause of action was a discretionary funding decision that could not be challenged in a taxpayer suit.

Later in May 2011, a judgment of dismissal with prejudice was entered in favor of City and VWR International against plaintiffs.

*Appeal*

Plaintiffs filed a timely notice of appeal in July 2011. In August 2011, plaintiffs filed a petition for writ of supersedeas and an immediate stay with this court. The petition asserted that VWR International began construction of the proposed project after entry of the trial court's judgment and requested a stay of all construction activities pending resolution of the appeal. The Attorney General's Office filed an amicus curiae brief in support of the petition for writ of supersedeas.

Shortly after its filing, this court denied the petition for writ of supersedeas.[8]

---

[8] This court has held that an appeal in a CEQA proceeding is not moot even though the project was completed and opened for business while the appeal was pending. (*Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880 [92 Cal.Rptr.2d 268] [project was the construction of a car wash].) This court concluded effective relief was possible because

## DISCUSSION

I. *Matters Concerning the Appellate Record*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *Statute of Limitations Applicable To CEQA Claim*

 A. *Background Facts*

On November 3, 2010, City filed a notice of exemption that referenced Guidelines section 15268[9] and stated the project was exempt from CEQA review as a ministerial action. The notice of exemption was in the format for notices of exemption set forth in appendix E of the Guidelines.

On December 28, 2010, (i.e., 55 days later) plaintiffs filed a verified petition and complaint that alleged as its first cause of action that City violated CEQA by failing to conduct any environmental review of the project.[10] Plaintiffs claimed the project was not exempt from CEQA and City was required to prepare an environmental impact report.

Plaintiffs then filed the FAP, which contained more extensive allegations concerning the timeliness of the lawsuit and the applicable statute of limitations. The FAP contended that the 35-day statute of limitations ordinarily triggered by the filing of a notice of exemption did not apply to the CEQA cause of action because City filed its notice of exemption on November 3, 2010, *prior to* approving the project on November 8, 2010. Under plaintiffs' view of the law, a premature notice of exemption has no legal effect and, thus, fails to trigger the 35-day statute of limitations. Plaintiffs supported their position that City approved the project on November 8, 2010, by alleging:

"a decision upholding the [trial] court's order directing the preparation of an EIR [environmental impact report] could result in modification of the project to mitigate adverse impacts or even removal of the project altogether." (*Id.* at p. 888.)

[*]See footnote, *ante*, page 408.

[9] Subdivision (a) of Guidelines section 15268 provides that "[m]inisterial projects are exempt from the requirements of CEQA." "Guidelines" refers to the regulations that implement CEQA and are codified in California Code of Regulations, title 14, section 15000 et seq.

[10] We conclude as a matter of law that the CEQA project (i.e., the whole of the action) in this case includes both the activity of building the distribution facility and the activity of improving the nearby streets. (*Tuolumne County Citizens for Responsible Growth, Inc. v. City of Sonora* (2007) 155 Cal.App.4th 1214, 1231 [66 Cal.Rptr.3d 645] [CEQA project consisted of proposed Lowe's home improvement center and realignment of adjacent road]; *Plan for Arcadia, Inc. v. City Council of Arcadia* (1974) 42 Cal.App.3d 712 [117 Cal.Rptr. 96] [construction of shopping center, parking lot and improvements to adjacent street were all part of a single CEQA project].)

"The official City of Visalia Agenda Item Transmittal for the December 10, 2010 City Council meeting states that the VWR Project was 'approved by Site Plan Review Committee on November 8, 2010,'—five days after the November 3, 2010 Notice of Exemption."

### B. *Demurrer and Trial Court's Ruling*

VWR International's demurrer asserted the CEQA cause of action was time-barred pursuant to section 21167 because it was filed more than 35 days after City filed the notice of exemption. VWR International supported its demurrer by filing a request for judicial notice of six documents, including the notice of exemption.

Plaintiffs opposed the demurrer, arguing that the notice of exemption must be filed after project approval or it is void *ab initio*. Plaintiffs also argued that their CEQA claim was timely under the 180-day limitations period that applies when a valid notice of exemption is not filed.

The trial court sustained the demurrer to the CEQA cause of action without leave to amend, concluding the CEQA claim was time-barred because it was not filed within 35 days of the filing of the notice exemption. The trial court cited *Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481 [106 Cal.Rptr.3d 858, 227 P.3d 416] (*Stockton Citizens*) for the principle that a petitioner has 35 days in which to challenge a notice of exemption that is valid on its face. In the trial court's view, this principle applied to challenges alleging that the project had not yet been approved when the notice of exemption was issued. Based on this view of the law, the trial court determined that plaintiff's CEQA claim was barred by the 35-day limitations period.[11]

### C. *Demurrer Statute and Standard of Review*

■ Code of Civil Procedure section 430.30, subdivision (a) provides that when "any ground for objection to a complaint . . . appears on the face thereof, . . . the objection on that ground may be taken by a demurrer to the pleading." The statute of limitations is a "ground for objection to a complaint" for purposes of this provision, and therefore may be raised in a demurrer. (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 493 [76 Cal.Rptr.2d 540].)

---

[11] As an alternate argument, plaintiffs contended that even if the notice of exemption was valid and the first ministerial approval was exempt from CEQA review, there were subsequent discretionary approvals not covered by the notice of exemption that required CEQA review. The trial court disposed of this argument by stating that "no future approvals triggered another deadline for bringing an action on this project." We address this argument in part II.G. of this opinion.

In a CEQA proceeding, an order sustaining a demurrer on statute of limitations grounds is subject to de novo review on appeal. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 [105 Cal.Rptr3d 181, 224 P.3d 920] (*Committee for Green Foothills*).)

Sometimes, it is difficult for demurrers based on the statute of limitations to succeed because (1) trial and appellate courts treat the demurrer as admitting all material facts properly pleaded[12] and (2) resolution of the statute of limitations issue can involve questions of fact.[13] Furthermore, when the relevant facts are not clear such that the cause of action might be, but is not necessarily, time-barred, the demurrer will be overruled. (*Committee for Green Foothills, supra*, 48 Cal.4th at p. 42.) Thus, for a demurrer based on the statute of limitations to be sustained, the untimeliness of the lawsuit must clearly and affirmatively appear on the face of the complaint and matters judicially noticed. (*Ibid.*)

### D. 35-day Statute of Limitations

#### 1. Background

Section 21080, subdivision (b) sets forth certain statutory exemptions from CEQA, including an exemption for ministerial projects. (§ 21080, subd. (b)(1); see Guidelines, § 15369 [definition of "ministerial"].) If a local agency determines that a project is exempt from CEQA as a ministerial project pursuant to subdivision (b) of Section 21080 and the local agency approves the project, "the local agency . . . may file a notice of the determination with the county clerk of each county in which the project will be located." (§ 21152, subd. (b).) The statute uses the term "notice of the determination," but the Guidelines refer to this particular filing as a "notice of exemption." (Guidelines, §§ 15062, 15374; see *Stockton Citizens, supra*, 48 Cal.4th at p. 488 [this type of notice of determination is otherwise known as a notice of exemption or NOE].)

The benefit that a public agency and project proponent receive from filing a notice of exemption is a shorter statute of limitations. Section 21167, subdivision (d)[14] provides for a 35-day limitations period when a notice of

---

[12] *Committee for Green Foothills, supra*, 48 Cal.4th at page 42.

[13] *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810, 811 [27 Cal.Rptr.3d 661, 110 P.3d 914]. Here, the issues of fact involve the approval of the activities constituting the CEQA project. (See pt. II.E. & G., *post*; Guidelines, § 15352 [definition of "approval"].)

[14] The complete text of this subdivision states: "An action or proceeding alleging that a public agency has improperly determined that a project is not subject to this division pursuant to subdivision (b) of Section 21080 or Section 21172 shall be commenced within 35 days from the date of the filing by the public agency, or person specified in subdivision (b) or (c) of Section

exemption is filed, but extends this period to 180 days if a notice of exemption is not filed. (*Committee for Green Foothills, supra*, 48 Cal.4th at p. 44, fn. 9.)

The 35-day limitations period triggered by filing a notice of exemption is also addressed in Guidelines section 15112, subdivision (c), which provides: "The statute of limitations periods under CEQA are as follows: [¶] . . . [¶] (2) Where the public agency filed a notice of exemption *in compliance with Section 15062*, 35 days after the filing of the notice and the posting on a list of such notices." (Italics added.)

### 2. *Contentions of the Parties*

Based on the plain, unambiguous language of Guidelines section 15112, subdivision (c), the parties agree that the 35-day limitations period is triggered only if the notice of exemption complies with Guidelines section 15062.[15] The disputes in this case concern (1) what is required to comply with Guidelines section 15062 and (2) whether the notice of exemption filed by City meets those requirements.

At oral argument, counsel for VWR International contended that a notice of exemption complies with Guidelines section 15062 if it is "facially valid." This contention is based on the California Supreme Court's use of the term "facially valid" in adopting the principle "that flaws in the decisionmaking process underlying a *facially valid and properly filed NOE* do not prevent the NOE from triggering the 35-day period to file a lawsuit challenging the agency's determination that it has approved a CEQA-exempt project." (*Stockton Citizens, supra*, 48 Cal.4th at p. 489, italics added.) Counsel for VWR International also argued that a notice of exemption is facially valid if it contains the information required by Guidelines section 15062, subdivision (a)(1) through (5).

In contrast, counsel for plaintiff argued that plain language set forth in subdivisions (a) and (b) of Guidelines section 15062 requires the notice of

21065, of the notice authorized by subdivision (b) of Section 21108 or subdivision (b) of Section 21152. If the notice has not been filed, the action or proceeding shall be commenced within 180 days from the date of the public agency's decision to carry out or approve the project, or, if a project is undertaken without a formal decision by the public agency, within 180 days from the date of commencement of the project." (§ 21167, subd. (d).)

[15] In other words, VWR International does not contend that the requirement in Guidelines section 15112, subdivision (c)(2) for "compliance with Section 15062" is inconsistent with, or unauthorized by, the controlling statute and therefore void. (See *Ontario Community Foundations, Inc. v. State Bd. of Equalization* (1984) 35 Cal.3d 811, 816 [201 Cal.Rptr 165, 678 P.2d 378] [administrative agency's regulations must be consistent with the statute; regulations that violate acts of the Legislature are void].) Therefore, we do not address this issue.

exemption to be filed after approval of the project. In plaintiff's view, a notice of exemption filed before project approval is noncompliant and cannot trigger the 35-day statute of limitations.

### 3. *Analysis of Regulatory Text*

The parties' dispute requires this court to interpret and apply Guidelines section 15062, which provides in relevant part:

"(a) When a public agency decides that a project is exempt from CEQA pursuant to Section 15061, and the public agency approves or determines to carry out the project, the agency may, file a notice of exemption. *The notice shall be filed, if at all, after approval of the project.* Such a notice shall include:

"(1) A brief description of the project,

"(2) The location of the project (either by street address and cross street for a project in an urbanized area or by attaching a specific map, preferably a copy of a U.S.G.S. 15' or 7-1/2' topographical map identified by quadrangle name),

"(3) A finding that the project is exempt from CEQA, including a citation to the State Guidelines section or statute under which it is found to be exempt,

"(4) A brief statement of reasons to support the finding, and

"(5) The applicant's name, if any.

"(b) A notice of exemption may be filled out and may accompany the project application through the approval process. *The notice shall not be filed with the county clerk or OPR until the project has been approved.*

"(c) When a public agency approves an applicant's project, either the agency or the applicant may file a notice of exemption. [¶] . . . [¶]

"(2) When a local agency files this notice, the notice of exemption shall be filed with the county clerk of each county in which the project will be located. Copies of all such notices will be available for public inspection and such notices shall be posted within 24 hours of receipt in the office of the county clerk. Each notice shall remain posted for a period of 30 days. Thereafter, the clerk shall return the notice to the local agency with a notation

of the period it was posted. The local agency shall retain the notice for not less than 12 months. [¶] . . . [¶]

"(d) The filing of a Notice of Exemption and the posting on the list of notices start a 35 day statute of limitations period on legal challenges to the agency's decision that the project is exempt from CEQA. If a Notice of Exemption is not filed, a 180 day statute of limitations will apply."

■ We conclude that the foregoing provisions of Guidelines section 15062 unambiguously require notices of exemption to be filed after the project has been approved. The second sentence in subdivision (a) of Guidelines section 15062 provides: "The notice shall be filed, if at all, after approval of the project." Similarly, the second sentence of subdivision (b) of Guidelines section 15062 provides: "The notice shall not be filed with the county clerk . . . until the project has been approved." Both subdivisions (a) and (b) of Guidelines section 15062 use the word "shall," which unambiguously indicates the mandatory nature of the requirement that notices of exemption be filed after the approval of the project. (See Guidelines, § 15005, subd. (a) [" 'shall' identifies a mandatory element which all public agencies are required to follow"].)

■ This mandatory language plainly means that a notice of exemption filed before project approval does not comply with Guidelines section 15062. It follows that filing a notice of exemption before project approval does not begin the running of the 35-day limitations period set forth in section 21167, subdivision (d). (See Guidelines, § 15112, subd. (c)(2) [agency required to file "a notice of exemption in compliance with Section 15062" to trigger 35-day limitations period].)

Our literal interpretation of Guidelines sections 15062 and 15112 is not new. It was adopted by the court in *County of Amador v. El Dorado County Water Agency* (1999) 76 Cal.App.4th 931 at pages 962 through 965 [91 Cal.Rptr.2d 66] (*County of Amador*). In that case, the court analyzed those provisions of the Guidelines and concluded that "a notice of exemption cannot be filed until after the project is approved." (*County of Amador, supra,* at p. 963.) The court also concluded that the agency had not approved the project before filing its notice of exemption and, thus, the notice was invalid and the 35-day limitations period did not bar the plaintiff's CEQA lawsuit. (*County of Amador, supra,* at p. 963.)

At oral argument, counsel for VWR International contended that the holding in *County of Amador* was rejected by the California Supreme Court in *Stockton Citizens, supra,* 48 Cal.4th 481. In VWR International's view, a facially valid notice of exemption triggers the 35-day limitations period and a

plaintiff who challenges a facially valid notice of exemption on the ground it was filed before project approval must file suit within the 35-day period. We disagree.

Our examination of the *Stockton Citizens* opinion revealed that the Supreme Court used the term "facially valid" twice. (*Stockton Citizens, supra,* 48 Cal.4th at pp. 489, 501.) Both times it was in the phrase "a facially valid and properly filed NOE . . . ." (*Ibid.*) For example, the court adopted the principle "that flaws in the decisionmaking process underlying a facially valid and properly filed NOE do not prevent the NOE from triggering the 35-day period to file a lawsuit challenging the agency's determination that it has approved a CEQA-exempt project." (*Id.* at p. 489.)

■ This statement's reference to a "facially valid and properly filed" notice of exemption indicates that the Supreme Court believed that a notice of exemption must satisfy two general requirements to be a "compliant NOE"[16] and thus trigger the 35-day limitations period. First, it must be facially valid, which means it must contain the information required by Guidelines section 15062, subdivision (a)(1) through (5). Second, the notice of exemption must be properly filed, which means it must comply with the filing requirements specified in Guidelines section 15062, subdivisions (a) through (c). Indeed, the Supreme Court was aware of the filing requirements for notices of exemption, as indicated by its inclusion of the citation "see also CEQA Guidelines, §§ 15062(a) [NOE shall be filed, if at all, 'after approval of the project'], 15374 [NOE may be filed after public agency has decided to carry out or approve a project . . . .].)" (*Stockton Citizens, supra,* 48 Cal.4th at p. 504.)

In addition, we believe that the following dicta in *Stockton Citizens* addressing when the notice of exemption should be filed supports our interpretation of the Guidelines, rather than VWR International's position: "[P]ersons seeking to challenge an agency decision on CEQA grounds may not, for purposes of the statute of limitations, go behind the agency's declaration in an NOE that it *has* approved a project. Instead, they must bring their action within 35 days after the NOE is filed and posted. Nor does this mean that the agency may therefore file an NOE *in advance* of an actual project approval, then proceed unmolested to approve the project at its leisure, free of environmental challenges." (*Stockton Citizens, supra,* 48 Cal.4th at p. 501, fn. 10.)[17]

---

[16] *Stockton Citizens, supra,* 48 Cal.4th at page 504. It appears the Supreme Court derived the term "compliant" from Guidelines section 15112, subdivision (c)(2), which refers to a notice of exemption filed "in compliance with [Guidelines] Section 15062 . . . ."

[17] We regard this statement as dicta because the facts of *Stockton Citizens, supra,* 48 Cal.4th 481, involved a project approved in December 2003, a notice of exemption filed in February

The court clearly rejected the idea that a notice of exemption could be filed in advance of project approval. Furthermore, its statements that a plaintiff may not go behind the agency's declaration that it has approved the project and that an action must be brought within 35 days after the notice of exemption is filed and posted cannot be interpreted to mean that plaintiffs must file a lawsuit within 35 days after the filing of a notice of exemption if they intend to pursue the argument that the project was not approved until after the notice of exemption was filed. It is extremely unlikely the Supreme Court intended such an interpretation because it directly conflicts with the text of Guidelines section 15062 and contradicts the court's use of the term "properly filed" in the phrase "a facially valid and properly filed NOE." (*Stockton Citizens, supra*, 48 Cal.4th at pp. 489, 501.)

Furthermore, if the Supreme Court had intended to impliedly overrule *County of Amador*, it is unlikely its decision in *Committee for Green Foothills, supra*, 48 Cal.4th 32, which was filed a month and a half before *Stockton Citizens*, would have included the following citation: "see also *County of Amador v. El Dorado County Water Agency* (1999) 76 Cal.App.4th 931, 962–963 [91 Cal.Rptr.2d 66] [notice of exemption was not valid, and did not trigger 35-day limitations period, because it was filed before the project was approved] . . . ." (*Committee for Green Foothills, supra*, at p. 53.)

█ Based on the foregoing, we conclude that *County of Amador* remains good law insofar as it held that a notice of exemption filed before actual project approval is invalid and does not trigger the 35-day limitations period.[18]

E. *Application of Compliance Requirement to City's Notice of Exemption*

█ The FAP alleges that City's notice of exemption "was filed on November 3, 2010, five days prior to the November 8, 2010 approval of the

---

2004, and a CEQA petition that was filed in July 2004. (*Stockton Citizens, supra*, at pp. 493–494.) Thus, the court was not presented with a situation where the project approval occurred *after* the notice of exemption was filed.

[18] A widely used CEQA practice guide reached the same conclusion: "A notice of determination or exemption may only be filed after the agency makes a decision to carry out or approve the project. Pub Res C §§21108(a)–(b), 21152(a)–(b). A notice that is filed prematurely has no legal effect and will not trigger the statute of limitations. *County of Amador v. El Dorado County Water Agency* (1999) 76 CA4th 931, 962 [91 CR2d 66]." (2 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 2d ed. 2012) § 23.21, p. 1160.)

The Attorney General's Office also agrees with this position. It filed an amicus curiae brief that argued *County of Amador* remains good law and premature notices of exemption are invalid.

VWR Project." Plaintiffs' position that the project was approved on November 8, 2010, is supported by the allegations that (1) a November 8, 2010, letter from City's community development director appears to be the first approval of the proposed project of any kind issued by City; (2) the November 8, 2010, letter stated: "The revised site plan was submitted for off-agenda review by the committee on October 14, 2010. The Site plan review number 10-113 is approved as a Revise and Proceed to building permits and off-site civil improvement design drawings"; and (3) a City-prepared document setting forth agenda items for the December 10, 2010, City Council meeting stated that the project was "approved by Site Plan Review Committee on November 8, 2010."

For purposes of the demurrer, we assume these allegations are true (*Committee for Green Foothills, supra*, 48 Cal.4th at p. 42) and, therefore, regard the project as being approved after the notice of exemption was filed. It follows that City's notice of exemption did not comply with Guidelines section 15062's requirement that notices of exemption shall be filed after the approval of the project. As a result, City's noncompliant notice of exemption did not trigger the 35-day limitations period and the demurrer to the CEQA cause of action should have been overruled.

### F. *Remand on Timing of Project Approval*

Our decision to overrule the demurrer is not a final determination that the CEQA cause of action was, in fact, timely filed. Instead, it is merely a determination that the dispute over whether the project received actual final approval before the notice of exemption was filed cannot be resolved against plaintiffs at the pleading stage of the proceedings. Because the statute of limitations defense might be established subsequently in this litigation, we will remand for further proceedings in which the parties' dispute regarding when the project actually was approved can be resolved.

On remand, the question regarding when the "approval of the project" occurred for purposes of subdivision (a) of Guidelines section 15062 will require application of the definition of "approval" contained in Guidelines section 15352:

"(a) 'Approval' means the decision by a public agency which commits the agency to a definite course of action in regard to a project intended to be carried out by any person. . . .

"(b) With private projects, approval occurs upon the earliest commitment to issue or the issuance by the public agency of a discretionary contract, grant, subsidy, loan, or other form of financial assistance, lease, permit, license, certificate, or other entitlement for use of the project."

In *Stockton Citizens, supra,* 48 Cal.4th at pages 505 through 506, our Supreme Court quoted these provisions, stated that "[n]o particular form of approval is required," discussed the city's *intent* to have a letter from the director of its community development department constitute final approval of a Wal-Mart project, and treated the director's letter as the final project approval. In reaching this conclusion about project approval, the court stated: "[T]here is no indication that any further approvals, other than ministerial building permits, were necessary to build the store." (*Id.* at p. 506.) The instant case is different because there are questions about further approvals being necessary to complete the project. (See pt. II.G., *post.*)

Based on the definition of "approval" in Guidelines section 15352 and the Supreme Court's discussion of that definition, it appears that factual disputes might need to be resolved before the definition can be applied in this case and the date of approval determined.[19] Alternatively, a motion for summary adjudication of issues might establish that there are no disputes of material fact regarding the application of the definition to the circumstances of this case.

### G. *Subsequent, Discretionary Approvals of Project Activity*

As an alternate ground for their position that the CEQA claim is not time-barred, plaintiffs contend that City took subsequent discretionary actions that required CEQA review. Specifically, plaintiffs contend that on November 8, 2010, City decided to grant VWR International relief from the minimum parking requirements and on December 10, 2010, the City Council voted to approve the improvement and reimbursement agreements for roadwork related to the new distribution facility. Plaintiffs cite *Orinda Assn. v. Board of Supervisors* (1986) 182 Cal.App.3d 1145 [227 Cal.Rptr. 688] for the proposition that if a CEQA project involves both ministerial and discretionary approvals, the exemption available for the approval of the ministerial activity does not apply to the entire project and the later discretionary approval

---

[19] The manner in which the superior court takes evidence and resolves any factual dispute is committed to the discretion of the superior court. The court may decide to hold a separate hearing on that issue before the parties brief the merits of the CEQA claim. At such a hearing addressing the statute of limitations issues, the superior court would not sit as a court of review. Instead, it would sit as a trier of fact, resolving factual disputes not addressed in the proceedings conducted by City, and thus would have the authority to take testimony or other evidence at such a hearing rather than being limited to the administrative record of proceedings. (See generally, 2 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act, *supra,* § 23.58, pp. 1198–1199.)

Another factual dispute that might need to be addressed at any such hearing concerns whether the notice of exemption was posted for the entire 30-day period.

triggers CEQA review.[20] Plaintiffs argue that the granting of the parking variance and the December 10, 2010, approval of the expenditure of up to $1.5 million for roadwork reimbursement would trigger CEQA anew for "the whole of an action." (Guidelines, § 15378 ["project" means the whole of the action].)

Plaintiffs' alternate argument and the responses of City and VWR International to that argument cannot be definitively resolved at the pleading stage of this lawsuit. Questions regarding the "approval" of those allegedly discretionary actions entail underlying factual issues of who did what, when the acts occurred, and what the acts meant.[21] Consequently, plaintiffs' alternate argument raises additional questions that require further proceedings to resolve.

III. *Standing to Sue for a Violation of Permit Requirements**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV. *Third Cause of Action Regarding Rule 9510*

Plaintiffs' third cause of action alleges that VWR International has a duty to submit an application and obtain an indirect source permit from SJVAPCD pursuant to rule 9510 and that SJVAPCD has an ongoing duty to enforce rule 9510. Under the third cause of action, plaintiffs seek to compel SJVAPCD to enforce rule 9510 and to enjoin VWR International from proceeding with the project until it has obtained an indirect source permit in compliance with rule 9510.

In March 2011, plaintiffs and SJVAPCD entered a stipulated judgment, which the trial court approved and filed. Among other things, the stipulated

---

[20] The mixture of ministerial and discretionary action has been addressed by the California Supreme Court: "Where a project involves elements of both ministerial and discretionary action, it is subject to CEQA. [Citations.]" (*Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 119 [65 Cal.Rptr.2d 580, 939 P.2d 1280]; 1 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act, *supra*, § 4.27, p. 186.1.) A slight variation of this principle—one phrased in terms of a single approval—is set forth in subdivision (d) of Guidelines section 15268: "Where a project involves an approval that contains elements of both a ministerial action and a discretionary action, the project will be deemed to be discretionary and will be subject to the requirements of CEQA."

[21] In addition, VWR International's argument that the road improvements were clearly approved, as part of the project described in the notice of exemption, raises the questions whether the road improvements received "approval" that early and, if so, whether the project description in the notice was adequate because roadwork is not mentioned in the notice. (Guidelines, § 15062, subd. (a)(1) [notice shall include a brief description of the project]; see *International Longshoremen's & Warehousemen's Union v. Board of Supervisors* (1981) 116 Cal.App.3d 265, 273 [171 Cal.Rptr. 875] [project description in notice was of debatable adequacy].)

*See footnote, *ante*, page 408.

judgment stated: "If the Court finds that any other governmental entity was or is required to issue a discretionary approval with respect to the VWR Project, then the Air District shall require VWR to comply with SJVAPCD Rule 9510 prior to the commencement of construction of the VWR Project, or within ten (10) days of the date of the ruling of the Court, whichever date is later."

The stipulated judgment also provided that the trial court would retain jurisdiction to enforce its terms.

The stipulated judgment effectively resolved the claims the third cause of action asserted against SJVAPCD. As a result, the remaining issue regarding the third cause of action is whether plaintiffs can pursue a writ of mandate under Code of Civil Procedure section 1085 against VWR International, a private entity, based on its failure to apply for an indirect source permit under rule 9510.

The trial court sustained the demurrer as to the third cause of action on the ground that plaintiffs lack standing. The trial court's order stated that none of the cases cited by plaintiffs analyzed the issue of the standing of a third party under Code of Civil Procedure section 1085 to compel a private entity to obtain a permit or comply with a rule of a governmental agency. On appeal, plaintiffs have made no effort to demonstrate that a writ of mandate under Code of Civil Procedure section 1085 can be issued against a private entity. They simply assert that the FAP alleges sufficient facts to establish public interest standing for enforcing rule 9510.

We agree with the trial court's determination that plaintiffs have not established that VWR International, a private party, has any *public duty* that can be enforced by a writ of mandate. Phrased in terms of the mandamus statute, plaintiffs have failed to show that VWR International has "a duty resulting from an office, trust or station" to perform an act. (Code Civ. Proc., § 1085, subd. (a).) Therefore, we conclude mandamus does not lie against VWR International. As a result, we will uphold the trial court's order insofar as it sustained the VWR International's demurrer to the third cause of action.

## V. *Illegal Expenditure of Government Funds on Roadwork**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 408.

## DISPOSITION

The judgment of dismissal is reversed. The trial court is directed to vacate its order sustaining the demurrer and to enter a new order (1) overruling the demurrer as to the first cause of action, (2) overruling the demurrer as to the claim against City in the second cause, (3) sustaining the demurrer without leave to amend as to the claim against VWR International in the second cause of action, (4) sustaining the demurrer without leave to amend as to the claim against VWR International in the third cause of action, and (5) sustaining the demurrer with leave to amend as to the sixth cause of action.[35]

Appellants shall recover their costs on appeal.

Cornell, Acting P. J., and Gomes, J., concurred.

A petition for a rehearing was denied October 4, 2012, and the opinion was modified to read as printed above. The petition of both respondents and real party in interest for review by the Supreme Court was denied December 19, 2012, S206590.

---

[35] Plaintiffs' motion for consideration of additional evidence filed on August 25, 2011, and City's request for judicial notice filed on March 14, 2012, are denied. Plaintiffs' request for judicial notice filed on May 11, 2012, is granted.