Filed 3/1/22  Torres v. City of Visalia CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EDDIE ARMANDO TORRES et al., | F082709 |
| Plaintiffs and Appellants, | (Super. Ct. No. VCU283578) |
| v. | |
| CITY OF VISALIA et al., | **OPINION** |
| Defendants and Respondents; | |
| J BEAST, LP et al., | |
| Real Parties in Interest and Respondents. | |

APPEAL from a judgment of the Superior Court of Tulare County.  Bret D. Hillman, Judge.

Lozeau Drury, Michael R. Lozeau and Brian B. Flynn for Plaintiffs and Appellants.

Herr Pedersen & Berglund, Leonard C. Herr and Rhea Ikemiya for Defendants and Respondents.

Wanger Jones Helsley, Timothy Jones, John P. Kinsey, and Nicolas R. Cardella for Real Parties in Interest and Respondents.

-ooOoo-

## INTRODUCTION

This is an appeal from an April 20, 2021 judgment of the Tulare County Superior Court entered in favor of defendants/respondents City of Visalia, City Council for the City of Visalia, Curtis Cannon in his official capacity as Community Development Director, and Paul Bernal in his official capacity as City Planner (City).[1]

City permitted real parties in interest/respondents J Beast, LP, and JBB Development, Inc. (Developer)[2] to build warehouses on real property bordered by Plaza Drive on the west and Riggin Avenue on the north. In an amended writ petition filed on November 24, 2020, plaintiffs/appellants Eddie Armando Torres and Laborers' International Union of North America, Local Union 294 (collectively, appellants) alleged that the California Environmental Quality Act (CEQA) (Pub. Resources Code,[3] § 21000 et seq.) required City to conduct environmental review because it had performed a discretionary action in connection with Developer's project, i.e., City had adopted a resolution that vacated its access rights along Plaza Drive and Riggin Avenue. On March 22, 2021, the superior court denied the petition on the grounds that (1) City's adoption of the aforementioned resolution constituted a ministerial activity; and (2) in the alternative, the activity was covered by CEQA's common sense exemption.

On April 26, 2021, appellants filed a notice of appeal. On December 23, 2021, after the matter was fully briefed, Developer filed a motion to dismiss the appeal. Developer asserts that the case has become moot because the warehouses have been completed:

> "[Developer] ha[s] completed construction on all four buildings comprising the Project, tenants have taken possession of, and begun

---

[1] We refer to defendants/respondents as a single entity for brevity.

[2] We refer to real parties in interest/respondents as a single entity for brevity.

[3] Unless otherwise indicated, subsequent statutory citations refer to the Public Resources Code.

2.

operating in, each of the four buildings, and there is nothing to be gained from any further environmental review. Accordingly, Appellants cannot be granted any effectual relief."

Appellants filed their opposition to the motion on January 7, 2022, and Developer filed a reply on January 12, 2022.

We conclude the case is moot and dismiss the appeal.

## BACKGROUND

Developer has owned the project site since 2013. The site was once part of a larger tract owned by a family trust and zoned for agricultural use. In 1991, the tract was subdivided, and the trust relinquished "access rights along Riggin Ave[nue] and Plaza Dr[ive]" to City.

In 2014, City adopted an updated general plan that rezoned certain areas— including the project site—for industrial use. This designation specifically "allows primary manufacturing, processing, refining, and similar activities including those with outdoor facilities" and "accommodates warehousing and distribution with supporting commercial services and office space."[4] In connection with City's adoption of the updated general plan, an environmental impact report (EIR) was prepared and certified.

In 2016, City approved "Design & Improvement Standards" (some capitalization omitted) pertaining to concrete structures. These standards govern, among other things, commercial drive approaches.

In 2018, Developer applied for review of its site plan for four industrial warehouses spanning nearly 700,000 square feet. The plan included three commercial drive approaches: one on Plaza Drive and two on Riggin Avenue. City completed its

---

[4] In addition, City's Municipal Code provides that "warehousing storage [¶] – primary use" and "warehousing storage [¶] . . . [¶] – not to exceed 20% of gross floor area of permitted use" are "permitted by right" in industrial zones. (Visalia Mun. Code, ch. 17.25, § 17.25.030, capitalization omitted, see *id.*, § 17.25.010 et seq.)

3.

review of Developer's site plan on January 2, 2019, and determined that Developer's plan complied with all relevant standards.[5]

On November 15, 2019, City issued a building permit for one warehouse (Building B). Developer commenced construction of Building B on January 6, 2020, and appellants became aware thereof on or about February 18, 2020.

On March 5, 2020, City issued a building permit for another warehouse (Building A). By the end of July 2020, Buildings A and B were erected.

On July 20, 2020, appellants filed a petition for writ of mandate. They alleged that City violated CEQA by granting Developer's building permits before vacating its access rights along Plaza Drive and Riggin Avenue and conducting environmental review. Appellants asked the superior court to "set aside any and all approvals of the Project . . . unless and until [City] ha[s] prepared, circulated, and considered a legally adequate CEQA document prior to any subsequent approval action"; direct City and Developer "to suspend all activity in furtherance of the Project and to refrain from taking or authorizing any activities in furtherance of the Project . . . unless and until [City] compl[ies] fully with CEQA"; and "[i]ssue a preliminary and permanent injunction staying the effect of [City's] approvals related to the Project and enjoining any further construction activities unless and until [City] compl[ies] fully with CEQA."

On August 4, 2020, appellants filed an ex parte application for a temporary restraining order (TRO) enjoining City and Developer from taking further action with respect to the project. On August 20, 2020, the superior court denied the application,

---

[5] City's Municipal Code states:

"The purpose of the site plan review permit is to assure that developments, new and remodeled buildings and structures, and improvements to land are reviewed to ensure substantial compliance with the general plan, municipal code, policies, and improvement standards of the city." (Visalia Mun. Code, ch. 17.28, § 17.28.010.)

4.

finding that appellants did not demonstrate that they would suffer great or irreparable injury. It reasoned, in part:

> "Site plan review was completed for this project on January 2, 2019. No one objected at the Site Plan Review state or appealed [City's] review. Building permits were issued in November 2019 and construction started in January of this year. Petitioner is seeking ex parte relief to stop construction on a project that was approved over 18 months ago, commenced over seven months ago and where two of the subject buildings are already completed and occupied. [¶] . . . [¶]

> "In balancing the respective harms, . . . [C]ity and [D]eveloper point to significant expenditures to date, including grading, construction of warehouse pads, and completed construction of two warehouses at a cost of over $600,000 and the potential loss of loan funding of $28,600,000. The court can't quantify similar potential losses to [appellants]. The subject warehouses are being constructed in a rural industrial area zoned for that use.

> "The evidence submitted by [appellants] discussing the potential harms is speculative. It appears the only expert who went to the project site was the wildlife expert. H[e] discusses newt deaths in Los Gatos and animal carcasses in Contra Costa, but the court can't conclude there would be adverse wildlife impact here. He does not cite any observed impacts in his declaration. The traffic and air quality experts are also speculative in their estimated damages, before reaching identical conclusions that [t]he issues should be further studied before [B]uildings A and B are occupied and before [B]uildings C and D are constructed. Respondents have submitted evidence of far more tangible harms."

On August 24, 2020, appellants filed a notice of appeal from this ruling. On September 1, 2020, they petitioned this court for a writ of supersedeas. In an accompanying memorandum of points and authorities, appellants claimed:

> "[I]f [Developer] complete[s] construction of all four warehouses prior to this Court's decision on the appeal, any relief that this Court could offer enjoining such construction would be rendered moot and meaningless."

On September 3, 2020, this court denied the petition. Subsequently, at appellants' request, the appeal was dismissed.

5.

In October 2020, City issued building permits for the two remaining warehouses (Buildings C and D). On November 16, 2020, in accordance with the advice of its staff, City passed and adopted Resolution No. 2020-61. Under this resolution, City "order[ed] the summary vacation and abandonment of the access rights" along Plaza Drive and Riggin Avenue pursuant to Streets and Highways Code section 8300 et seq.

On November 24, 2020, appellants filed an amended petition. They alleged that City's "decision to vacate and abandon the access rights previously dedicated and accepted by the City was a discretionary action" and CEQA requires "environmental review of [Developer's] Project" "prior to final approval of the Project" "[i]f any part of the Project involves a discretionary decision by the City." Appellants asked the superior court to "set aside any and all approvals of the Project . . . unless and until [City] ha[s] prepared, circulated, and considered a legally adequate CEQA document prior to any subsequent approval action"; direct City and Developer "to suspend all activity in furtherance of the Project and to refrain from taking or authorizing any activities in furtherance of the Project . . . unless and until [City] compl[ies] fully with CEQA"; and "[i]ssue a preliminary and permanent injunction staying the effect of [City's] approvals related to the Project and enjoining any further construction activities unless and until [City] compl[ies] fully with CEQA." In a ruling filed on March 22, 2021, the court denied the petition. It concluded: (1) "adoption of Resolution 2020-061" "as it relates to the warehouse development" "was required by the City's prior approval of the development" and "constituted a ministerial activity"; and (2) alternatively, "Resolution 2020-061 also falls under the 'common sense' exemption as it involves a change in legal title and does not impact the underlying use of the property—which was previously approved pursuant to the 2014 General Plan Update and the subsequent site plan approvals and building permits." Judgment was entered on April 20, 2021.

6.

On April 26, 2021, appellants filed a notice of appeal from the judgment. On May 10, 2021, they petitioned this court for a writ of supersedeas. In an accompany memorandum of points and authorities, appellants claimed:

> "[I]f [Developer] complete[s] construction of the final two warehouse buildings prior to this Court's decision on the appeal, although Petitioner's CEQA action would not be moot, any relief that this Court could offer enjoining such construction would be rendered impractical."

On May 11, 2021, this court denied the petition.

## DISCUSSION

### I. General mootness principles

" 'California courts will decide only justiciable controversies. [Citations.] The concept of justiciability is a tenet of common law jurisprudence and embodies "[t]he principle that courts will not entertain an action which is not founded on an actual controversy . . . ." [Citations.] Justiciability thus "involves the intertwined criteria of ripeness and standing. A controversy is 'ripe' when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." [Citation.] But "ripeness is not a static state" [citation], and a case that presents a true controversy at its inception becomes moot " 'if before decision it has, through act of the parties or other cause, occurring after the commencement of the action, lost that essential character' " [citation].' [Citation.] Stated differently, moot cases 'are "[t]hose in which an actual controversy did exist but, by the passage of time or a change in circumstances, ceased to exist." [Citation.]' [Citation.]" (*Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714, 722 (*Parkford*).)

" 'Because " 'the duty of . . . every . . . judicial tribunal . . . is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or . . . to declare principles or rules of law which cannot affect the matter in issue in the case before it[,] [i]t necessarily follows that when . . . an event occurs which renders it impossible for [the] court, if it should decide the case in favor of

7.

plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment . . . .' [Citations.]" [Citation.] The pivotal question in determining if a case is moot is therefore whether the court can grant the plaintiff any effectual relief. [Citations.] If events have made such relief impracticable, the controversy has become "overripe" and is therefore moot. [Citations.] [¶] . . . When events render a case moot, the court, whether trial or appellate, should generally dismiss it. [Citations.]' [Citations.]" (*Parkford*, *supra*, 54 Cal.App.5th at p. 722.)

"General principles for determining whether an appeal is moot have been applied to CEQA cases." (*Santa Monica Baykeeper v. City of Malibu* (2011) 193 Cal.App.4th 1538, 1547.)

## II.     Analysis

Construction of the project is complete. In their motion to dismiss, Developer asserts that each of the "four warehouse buildings are now occupied by tenants and fully operational." Appellants do not dispute this.

In their amended writ petition, appellants requested: (1) an order "directing [City] to set aside any and all approvals of the Project"; (2) an order "directing [Developer] to suspend all activity in furtherance of the Project"; and (3) an order "staying the effect of [City's] approvals related to the Project and enjoining any further construction activities." Clearly, the requested relief can no longer be effectual. Appellants acknowledged this ramification in their prior petitions for writ of supersedeas.

In their opposition to Developer's dismissal motion, appellants contend that "effective relief is readily available from an order requiring the City to vacate its approvals of the four buildings and to prepare an appropriate CEQA document . . . evaluating the 697,000 square feet [*sic*] warehouse distribution center's potential significant environmental impacts from its operations." (Boldface & italics omitted.) Appellants then list potential modifications that might be relevant to possible

8.

environmental impacts.[6]  The record demonstrates, however:  (1) Developer's warehouses are located in an area that was rezoned for industrial use in 2014 pursuant to City's updated general plan; (2) the plan provides that an industrial use zone "accommodates warehousing and distribution with supporting commercial services and office space"; (3) in connection with its adoption of this plan, City prepared and certified an EIR; (4) City's Municipal Code provides that "warehousing storage  [¶]  – primary use" and "warehousing storage  [¶] . . . [¶]  – not to exceed 20% of gross floor area of permitted use" are "permitted by right" in industrial zones; and (5) in January 2019, City completed review of Developer's site plan and concluded that it complied with the general plan, municipal code, policies, and improvement standards.  "CEQA mandates that projects which are consistent with the development density established by existing zoning, community plan, or general plan policies for which an EIR was certified shall not require additional environmental review, except as might be necessary to examine whether there are project-specific significant effects which are *peculiar* to the project or its site.  This streamlines the review of such projects and reduces the need to prepare repetitive environmental studies."  (Cal. Code Regs., tit. 14, § 15183, subd. (a), italics added.)

Appellants cite *Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880 (*Woodward Park*) for the proposition that "even the completed

---

[6] In their opposition, appellants cite section 21167.3, subdivision (b) and California Code of Regulations, title 14, section 15233, subdivision (b) for the proposition that "in the event a stay or injunction is not issued in a lawsuit challenging a project under CEQA, the project 'approval granted by a responsible agency in this situation provides only permission to proceed with the project at the applicant's risk prior to a final decision in the lawsuit . . . .' "  (Boldface & italics omitted.)  However, these provisions only apply where the "action or proceeding alleg[es] that an environmental impact report or a negative declaration does not comply with" CEQA.  (§ 21167.3, subd. (a); see *id.*, subd. (b) ["as described in subdivision (a)"]; Cal. Code Regs., tit. 14, § 15233 ["a lawsuit is filed challenging an EIR or negative declaration for noncompliance with CEQA"].)

construction [of the project] does not moot [their] CEQA claims . . . ." In *Woodward Park*, the plaintiff challenged the city's approval of a car wash project and sought a writ ordering the preparation of an EIR. (*Id.* at pp. 881-882.) The trial court agreed and issued the requested order. (*Id.* at p. 882.) The city and developer appealed. (*Ibid.*) The developer proceeded with construction of the car wash without complying with the trial court's order to prepare an EIR and completed construction while the appeal was pending. The city argued, on appeal, that the case had become moot by the developer's completion of the project. This court disagreed. Notably, we said: "[D]espite the trial court's order mandating the preparation of an EIR, the City chose to delay preparation of the EIR and [the developer] chose to operate the facility absent the EIR. It would hardly be sound public policy to allow a party to avoid CEQA by continuing with construction of a project in the face of litigation, delaying preparation of a court-ordered EIR pending appeal, and then arguing the case is moot because the project has been completed and is operating." (*Id*. at p. 889.)

Here, in contrast to the city and developer in *Woodward Park*, construction did not proceed in violation of a court order. The project site was in an area zoned for industrial use in a general plan for which an EIR had been prepared and certified. Developer submitted its site plan, which City reviewed and found to comply with that general plan, its municipal code, its policies, and its improvement standards. Building permits were issued for the first two warehouses. Developer relied on the building permits to begin construction. By the time appellants filed their writ petition and ex parte TRO application, the first two warehouses were built. After the superior court denied the TRO application on its merits and this court denied appellants' petition for writ of supersedeas, City issued building permits for the two remaining warehouses. Appellants then filed an amended writ petition. Finding the project to be exempt from CEQA review, the superior

10.

court denied the petition and entered judgment. This court denied appellants' second petition for writ of supersedeas.[7]

Developer points to *Parkford*. In *Parkford*, the County of Placer issued a building permit for construction of an expansion of a commercial self-storage facility. The plaintiff challenged the issuance of that permit under CEQA and the Planning and Zoning Law (Gov. Code, § 65000 et seq.) and requested a TRO and preliminary injunction. (*Parkford*, *supra*, 54 Cal.App.5th at pp. 718-719.) The trial court declined to issue the TRO and denied the request for preliminary injunction. On the plaintiff's writ petition, the trial court concluded the issuance was ministerial rather than discretionary and that the plaintiff's Planning and Zoning Law challenge was barred by the statute of limitations. (*Parkford*, at pp. 720-721.) On appeal, the court found the completion of the commercial self-storage facility expansion rendered moot the plaintiff's challenge to the building permit authorizing construction of the expansion. (*Id.* at p. 721.) It noted "Nothing in the record indicate[d] [the construction was done] in bad faith or in attempt to evade the requirements of CEQA or the Planning and Zoning Law." (*Id.* at p. 725.) The plaintiff filed his writ petition and TRO request approximately six months after construction began, and eight months prior to its completion. (*Id*. at pp. 718-719.) As such, the court noted the plaintiff did not take steps to maintain the status quo pending

---

[7] Appellants cite other cases, all of which are factually inapposite. (See, e.g., *Citizens for the Restoration of L Street v. City of Fresno* (2014) 229 Cal.App.4th 340 [opinion does not indicate that project developer commenced construction of proposed duplex structures]; *Coalition for Clean Air v. City of Visalia* (2012) 209 Cal.App.4th 408, 413, 417 [construction of supply and distribution facility began after plaintiff filed CEQA lawsuit]; *Bakersfield Citizens for Local Control v. City of Bakersfield* (2004) 124 Cal.App.4th 1184, 1195 [activities related to construction of shopping center commenced after plaintiff filed CEQA lawsuit]; *Association for a Cleaner Environment v. Yosemite Community College Dist.* (2004) 116 Cal.App.4th 629, 638-639 [project at issue concerned closure, cleanup, and demolition of college campus shooting range].)

resolution of its claims by seeking injunctive relief or a stay "until the project was nearly completed." (*Id*. at p. 725.)

Here, appellants petitioned for a writ of mandate and applied for a TRO: (1) approximately 18 months after City completed site plan review; (2) approximately seven months after construction began on Building B; (3) approximately five months after appellants learned of said construction; and (4) at around the time two of the four warehouses were built. As in *Parkwood*, nothing in this record indicates the construction was done in bad faith or to evade the requirements of CEQA.

We conclude the completion of the challenged project has rendered moot appellants' challenge to City's adoption of a resolution vacating its access rights along Plaza Drive and Riggin Avenue.

## **DISPOSITION**

The appeal is dismissed. (Code Civ. Proc., § 913.) Defendants/respondents City of Visalia, City Council for the City of Visalia, Curtis Cannon in his official capacity as Community Development Director, and Paul Bernal in his official capacity as City Planner, and real parties in interest/respondents J Beast, LP, and JBB Development, Inc. shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

DETJEN, J.

WE CONCUR:

POOCHIGIAN, Acting P. J.

SNAUFFER, J.

12.