[No. F032200. Fifth Dist. Jan. 20, 2000.]

WOODWARD PARK HOMEOWNERS ASSOCIATION, Plaintiff and Respondent, v.
GARREKS, INC., et al., Defendants and Appellants.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, III, IV, and V.

**COUNSEL**

Law Offices of Walter W. Whelan and Walter W. Whelan for Defendant and Appellant Garreks, Inc.

Hilda Cantú Montoy, City Attorney, Robert D. Gabriele, Assistant City Attorney, and Anthony W. Cresap, Deputy City Attorney, for Defendant and Appellant City of Fresno.

Robert J. Rosati for Plaintiff and Respondent.

**OPINION**

**WISEMAN, J.**—A homeowners association challenged in court the approval of a car wash project proposed by a corporation, to be located in a shopping center bordered by residential neighborhoods. The homeowners

association claimed the California Environmental Quality Act (CEQA) required the City of Fresno to prepare an environmental impact report (EIR) before approving the project. The trial court agreed and ordered an EIR prepared. Despite the pending lawsuit and the court's order, the corporation continued with construction and completed the project—never obtaining an EIR. On appeal, the City of Fresno takes the position that an EIR is no longer required because the project is completed. Although the corporation does not explicitly adopt this position, it does so implicitly by arguing it is absurd to require an EIR because the project is completed.

The corporation apparently made a calculated business decision to go forward with the project in spite of protests by residential neighbors and pending litigation. Now the corporation must live with the consequences of its financial choice. We affirm the trial court's decision ordering an EIR be prepared. To the City of Fresno and the corporation we say: It is never too late.

PROCEDURAL HISTORY

On February 19, 1998, the Woodward Park Homeowners Association, Inc. (WPHA) filed a verified petition for writ of mandate against the City of Fresno (City), Garreks, Inc. (Garreks), and California Investment, Inc. (California Investment). It challenged the City's approval of two independent car wash projects, one proposed by Garreks and one by California Investment. WPHA sought a writ ordering the City to require Garreks and California Investment to prepare EIR's on their projects. The parties answered and briefed the issues in the petition.

Pursuant to the court's request, the parties waived oral argument and submitted the matter. On July 30, 1998, the court filed its decision. It denied the petition as to California Investment's project, but granted with respect to Garreks's project and ordered the City to prepare an EIR.

Garreks moved to vacate the decision. In the alternative, Garreks moved for a new trial. The court relieved WPHA from submitting opposition papers and denied the motions without oral argument on the ground they were devoid of merit. Judgment was entered granting the peremptory writ of mandate in part and denying it in part. With respect to Garreks's project, the City was directed to 1) address the architectural and aesthetic impacts of the project by a focused EIR; 2) void its adoption of the negative declaration; and 3) rescind its action approving the project. The judgment was stayed pending appeal.

Garreks timely filed its notice of appeal, and the City joined.

In August 1996, the Fresno City Council approved a 9.42-acre commercial center on the northeast corner of North Cedar and East Nees Avenues in Fresno, California, with the exception of a proposed service station, minimart and automatic car wash. Later, the neighboring homeowners and developers of the property filed suit, and both cases settled. In the developers' action, the parties stipulated the Fresno City Council's actions only resulted in the denial of a permit to build the car wash, not the service station or the minimart. It was further stipulated that Garreks could resubmit a conditional use permit application for the automatic car wash no sooner than August 27, 1997.

On August 27, 1997, Garreks applied for a conditional use permit to develop an automatic car wash with vacuum islands on a .9-acre parcel of the commercial center in dispute (the project). The City's initial study on the conditional use permit, dated September 24, 1997, provided:

"Operation of the automatic car wash and vacuum islands will produce increases in neighborhood noise levels, particularly during the hours of operation. Fresno Municipal Code Section 12-306-N-39 requires that the noise level generated by the car wash facility at the boundary between the shopping center and existing or planned residential uses shall not exceed community noise equivalency levels (CNEL) of 60 dB. The shopping center is surrounded by residential land uses on the north, east, and south and North Cedar and East Nees Avenues, both arterial streets.

"Staff is recommending in the conditions of approval for the conditional use permit that an acoustical analysis prepared by a qualified professional be submitted for review and approval demonstrating that the noise levels generated by the car wash and vacuums does not exceed 60dB CNEL at the north, east and south boundaries between the shopping center and existing residential districts.

"In addition, Fresno Municipal Code Section 12-306-N-39 requires that the proposed automatic car wash and vacuums be located not less than 300 feet from the existing residential districts located north, east and south of the project.

"Mitigation Measure: Locate the automatic car wash and vacuum islands at least 300 feet from the residential districts located north, east and south of the property. [¶] . . . [¶]

"No public or scenic vista will be obstructed by the development and no valuable vegetation will be removed. The developer proposes to use an architectural design which is compatible with surrounding developments."

On October 3, 1997, the City issued a mitigated negative declaration, finding the project would clearly not have a significant adverse effect on the environment. In an October 8, 1997, memorandum, the City's development department staff stated:

". . . The Fresno Municipal Code Section 12-306-N-39 contains the following requirements for automatic car washes in the C-1 zone district [zoning for Garreks' proposed project]:

"1.   The automatic car wash shall be located within a planned unified shopping center of not less than five acres in area.

"2.   The automatic car wash shall be located not less than 300 feet from an existing or planned residential district.

"3.   The noise level generated by the car wash at the boundary between the shopping center and existing or planned residential uses shall not exceed community noise levels (CNEL) of 60dB.

"4.   The facility shall be architecturally compatible with the shopping center in which it is located and shall be fully enclosed when not in operation.

"As part of the Mitigated Negative Declaration and the Special Permit Conditions of Approval, the applicant shall be required to comply with the municipal code requirements.

"It should be noted that, officially, the zone districts extend to the middle of the right-of-way; i.e., the middle of East Nees Avenue. There is an R-1-C/UGM residential zone district south of East Nees Avenue. East Nees Avenue has a right-of-way of 106 feet. Therefore, technically there are 53 feet of right-of-way to the residential zone district on the south side of East Nees Avenue. There are 194 feet from the car wash to the property line and 53 feet to the center of East Nees Avenue for a total of 247 feet between the car wash and 'an existing or planned residential district'.

"However, the Development Department has exercised some flexibility in measuring the distances between automatic car washes and residential districts by measuring from the proposed car wash to the residential property

line to accommodate developments . . . . Using this logic, the distance from the car wash to the property line of the residential zone district is 300 feet (194 + 106). Hours of operation for the automatic car wash and vacuum islands shall be limited to 6:00 a.m. to 10:00 p.m."

The staff recommended approval of a conditional use permit application for the project, and on October 23, 1997, the director of the development department approved the application, subject to a number of conditions. Later, the City received 14 letters of appeal from the surrounding residential property owners protesting the director's approval of the application and citing the following concerns: 1) less than 300 feet proximity between the project and their homes; 2) excessive noise generated by the project and its proposed hours of operation; 3) architectural incompatibility of the service station, minimart and car wash with the rest of the shopping center, and its resulting impact on their homes; and 4) feasibility of architectural integration of the commercial center given that the 9.42-acre parcel has been subdivided for purposes of sale, lease or financing of the project.

At the December 3, 1997, Fresno City Planning Commission (planning commission) hearing, the development department staff addressed the concerns of the neighboring property owners:

". . . The Fresno Municipal Code, section [12-306-N(39)] . . . includes a provision that in C-1 districts car washes cannot be located any closer than 300 feet to the nearest residential district. In this instance, the south boundary or south wall of the car wash building . . . is located exactly 300 feet from the adjacent residential lot line to the south which is the single family homes that were developed by Spalding Lofton in [tract] 3710. The contention of the neighborhood is the fact that the 300 foot district boundary actually falls in the middle of Nees Avenue and technically would mean the car wash was located 247 feet from the nearest residential district, being that Nees Avenue is 106 feet wide with a 53 foot half width. So, the contention of the neighborhood is that we have fudged on the interpretation of the Code. I can tell you that of all car washes we reviewed in the [C]ity of Fresno since the existence of this code provision, fifteen years now at least, that's the early 1980's, we have always as a matter of practice interpreted that provision of 300 feet to mean the nearest residential lot boundary. And we did so in this instance. . . . We have consistently applied that 300 foot standard in that manner. . . .

"The second contention of the neighborhood relates to the proximity of the vacuum islands proposed for this particular project. The vacuum islands were always proposed as part of this project. The developer['s] . . . intent

was always to put in coin operated vacuums, even if [the planning commission] take[s] action or the [City] Council consequently takes action to deny the car wash. . . . In this particular instance, the neighborhood contends that the vacuum islands . . . are located [closer] than the 300 foot [restriction], in fact much closer. There is one that's roughly about 90 feet from the nearest property on the south side of Nees Avenue. . . . The director has . . . said if it is [the planning commission's] contention that vacuum islands are inextricabl[y] tied to a car wash, they should be considered part of the car wash function, then that will be the policy and the applicant will have to meet that 300 foot restriction.

"There was also concern from the neighborhood about the noise that would be produced by vacuum motors. It is a concern of Staff. . . . [Y]ou have to keep in mind that even though a vacuum island would not normally require any permit, other than perhaps an electrical permit for the electrical connection, it would have to operate under the control of the city's noise ordinance. . . . And it is enforceable if there are complaints.

"The third issue that the appellants raised relates to the integration of the design of the project into the entire commercial corner. This is a valid concern. The neighbors were concerned that this particular entire ten acre [site] has been parceled off for purposes of sale, lease, and financing. . . . Irrespective of that Staff will require the best way we can the integration and unification of that center in accordance with the C-1 district standards."

A number of homeowners testified at the hearing regarding their concerns. The planning commission directed Garreks to conduct a noise study of the project, and to submit the study to it on January 7, 1998. In addition, the planning commission requested that development department staff provide direction regarding whether vacuum facilities are considered an integral part of an automatic car wash facility. The hearing was continued to January 7, 1998.

On December 29, 1997, Garreks submitted the noise study, conducted by Brooks Ransom Associates (structural and civil engineers), to the development department. Brooks Ransom investigated the actual noise impact of vacuum islands to adjacent residential property using data obtained from an existing site. Brooks Ransom concluded the project would have almost no effect on sound levels at the residential property line during peak and off-peak traffic conditions.

In the development department's January 7, 1998, report to the planning commission, the development director determined that vacuum facilities are

integral to an automatic car wash and should be subject to Fresno Municipal Code requirements. "That is, vacuum islands will have to be placed at least 300 feet from the nearest existing or planned residential district and the noise emitted from the vacuum motors as well as the car wash shall not exceed 60 dB/CNEL at the boundary between the C-1 shopping center and existing or planned residential uses."

At the January 7, 1998, planning commission hearing, development department staff stated: "The applicant has prepared a noise study and it is included in your packet today for your review. Staff does not have anybody on staff that we would say would be an expert to review this. We've checked with our Building Division and we really don't have what we would call a qualified acoustical consultant from the [standpoint] of having extensive experience in reviewing these noise studies. So [we've] reviewed the noise study and accepted it on its face value. There are some concerns . . . . And on the surface the noise study shows that when the vacuums and car wash operate, combined with the ambient traffic noise, the noise levels adjacent to nearby residential districts will exceed 60 decibels. . . . [I]n our noise ordinance, it speaks to noise regulations that relate to ambient noise levels, and ambient means all combined noises in a given area. And under that noise ordinance during the [daytime] hours, 7:00 a.m. to 7:00 p.m., 60 decibels is the limit for there to be a . . . violation of the ordinance."

Neighboring residents were again permitted to express their concerns about the project. The planning commission approved Garreks's conditional use permit application, subject to a number of conditions. These included the construction of a five-foot masonry wall in the area of the vacuum islands and limited hours of operation (8:00 a.m. to 8:00 p.m.) of the vacuums.

The motion to hold a public hearing to review the planning commission's action failed before the Fresno City Council. According to the City, the project was completed and operating prior to the trial court's July 30, 1998, decision.

DISCUSSION

Both Garreks and the City contend the trial court erred in granting the peremptory writ of mandate because there was no substantial evidence the project might cause significant impact to the environment. Garreks also argues the judgment violates its equal protection rights and the court erred in ordering an EIR in lieu of less onerous remedies. The City further claims the case is moot because the project has already been constructed and is operating.

## I.  CEQA principles*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

## II.  Mootness

█  The City remarkably takes the position that this case is moot because the project was constructed and operating prior to the court's July 30, 1998, decision on WPHA's petition. It contends environmental review now would not serve any purpose under CEQA.[4] The City's argument is not only against public policy, it is absurd.

A case is moot when any ruling by this court can have no practical impact or provide the parties effectual relief. (*Downtown Palo Alto Com. for Fair Assessment v. City Council* (1986) 180 Cal.App.3d 384, 391 [225 Cal.Rptr. 559].) Courts have applied this rule to CEQA challenges, but not on the basis the City asserts here. (See, e.g., *Environmental Coalition of Orange County, Inc. v. Local Agency Formation Com.* (1980) 110 Cal.App.3d 164, 171-173 [167 Cal.Rptr. 735] [appeal of denial of petition for writ of mandamus moot where plaintiffs did not name city as defendant and did not enjoin city's proceeding with proposed project while mandamus action pending, since judgment cannot be rendered against nonparty to action]; *Hixon v. County of Los Angeles* (1974) 38 Cal.App.3d 370, 378 [113 Cal.Rptr. 433] [case moot where project involved replacement of trees and trees already cut down].)

This case does not present a situation where a ruling by this court can have no practical impact or not provide the parties relief. To the contrary, our ruling can afford WPHA effective relief. As recognized by WPHA, a decision upholding the court's order directing the preparation of an EIR could result in modification of the project to mitigate adverse impacts or even removal of the project altogether.

In support of its contention that the case is moot, the City relies principally on *Hixon*. In *Hixon*, the petitioners sought mandamus to compel a county to obtain an EIR in connection with street and sidewalk improvements that necessitated the removal and replacement of trees. The court held that because the trees had already been cut down, the trial court correctly determined that preparation of an EIR for that phase of the project would be

---

*See footnote, *ante*, page 880.

[4]WPHA argues the City has waived this issue by not raising it earlier. The state of the record does not lend itself to easy resolution of the waiver argument, as it is difficult to determine precisely when the project was completed and operated. We therefore elect to address the issue on the merits.

futile. (*Hixon v. County of Los Angeles, supra,* 38 Cal.App.3d at p. 378.) The distinction between *Hixon* and this case is obvious. In *Hixon,* the trees were *already cut down*; thus the original trees could not be returned. They could only be replaced, which is what the county had already done. (*Id.* at p. 376.) Here, in contrast, the project can be modified, torn down, or eliminated to restore the property to its original condition.

The City claims "[i]t is pointless to require environmental review for a project which has already been developed, because it would not serve one of the principal purposes of CEQA"—that of informing government decision-makers and the public about the potential significant environmental effects of proposed activities. The City also notes that an EIR is not to be used for approved projects. What the City fails to recognize is that Garreks proceeded with construction and completion of the project *after* WPHA filed its mandamus petition. How can the City or Garreks now legitimately complain that compliance with the court's order is unnecessary?

In addition, despite the trial court's order mandating the preparation of an EIR, the City chose to delay preparation of the EIR and Garreks chose to operate the facility absent the EIR. It would hardly be sound public policy to allow a party to avoid CEQA by continuing with construction of a project in the face of litigation, delaying preparation of a court-ordered EIR pending appeal, and then arguing the case is moot because the project has been completed and is operating.

For the first time during oral argument, the City noted that the Fresno Municipal Code provisions relating to automatic car wash projects have been amended. Citing *Fairbank v. City of Mill Valley* (1999) 75 Cal.App.4th 1243 [89 Cal.Rptr.2d 233], the City argued that we should apply the new code provisions. With no reference to the record before us, the City then claimed that, under the new provisions, Garreks has achieved architectural integration and a fair argument can no longer be made that the project may cause a significant effect on the environment. We find *Fairbank* distinguishable and reject the City's contention.

In *Fairbank,* the court recognized, as a general matter, amendments to the CEQA Guidelines should apply prospectively only. However, the court held, under the circumstances of that case, fairness and the need for finality militated in favor of retroactive application on appeal of regulations that provided a categorical exemption from the requirements of CEQA. The court noted the well-settled law in the land use context that, where no vested rights will be impaired, it is appropriate for an appellate court to apply the law in existence at the time of its decision rather than at the time an approval was

issued. (*Fairbank v. City of Mill Valley, supra,* 75 Cal.App.4th at pp. 1256-1257, fn. 12.) We find a distinction in the case where a party to an action has amended its own municipal code provisions, which directly affects the party's interest in the pending lawsuit. Otherwise, we would be laying a foundation for great abuse. We would be permitting a municipality to amend its own ordinances in order to potentially obtain a reversal of a judgment against it.

Garreks chose to continue with the project despite the risk that pending litigation could result in rescission of the City's action approving it. Apparently the City and Garreks buy into the philosophy of the mythical captain of the Starship Enterprise, James T. Kirk, who said: "May fortune favor the foolish." We do not. Garreks's decision to complete and operate the project, despite the pending litigation, in no way provides an exemption to CEQA.

Therefore, we find the case is not rendered moot.

III.-V.   *Substantial evidence of the project's significant effect on the environment**

. . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed with costs awarded to WPHA.

Dibiaso, Acting P. J., and Vartabedian, J., concurred.

---

*See footnote, *ante*, page 880.