Filed 8/26/20; Certified for Publication 9/16/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| PARKFORD OWNERS FOR A BETTER COMMUNITY, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF PLACER et al., <br><br> Defendants and Respondents; <br><br> SILVERSWORD PROPERTIES, LLC, et al., <br><br> Real Parties in Interest and Respondents. | C087824 <br><br> (Super. Ct. No. SCV0039094) |

The plaintiff in this matter, Parkford Owners for a Better Community (Parkford),

appeals from a judgment entered in favor of defendants, Placer County and Placer County

Community Development Resource Agency (collectively, the County), and real parties in

interest, Silversword Properties, LLC (Silversword), K.H. Moss Company, and Moss

1

Equity (collectively, Moss). Silversword owns property upon which Moss operates a commercial self-storage facility (Treelake Storage). Parkford's lawsuit challenges the County's issuance of a building permit for construction of an expansion of Treelake Storage, asserting the County failed to comply with both the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) and the Planning and Zoning Law (Gov. Code, § 65000 et seq.). The trial court concluded: (1) the County's issuance of the building permit was ministerial rather than discretionary, and therefore CEQA did not apply; and (2) Parkford's challenge under the Planning and Zoning Law was barred by the statute of limitations.

Parkford challenges each of these conclusions in this appeal. Real parties in interest, joined by the County, argue the trial court correctly decided each of these issues, and in the alternative, urge this court to affirm the judgment because Parkford's challenge to the building permit became moot prior to the entry of judgment, when construction on the expansion project was completed. We conclude Parkford's claims are moot and dismiss the appeal.

BACKGROUND

Treelake Storage has been in operation for more than 20 years. The business is located within the Treelake Village planned unit development in Granite Bay. Treelake Village was approved by the County's board of supervisors more than 30 years ago. As originally approved, Treelake Village would consist of over 1,000 residential units and various amenities, including a shopping center, fire station, private recreation and equestrian facilities, a number of lakes and waterways, a public park, and storage for boats and recreational vehicles owned by residents of the community. The latter amenity, to be located on a power line easement that crossed the property, would eventually become Treelake Storage. How that came about will be set forth in some detail.

## *Environmental Review*

Before doing so, we briefly summarize the environmental review process undertaken by the County with respect to approving the Treelake Village development project. Our summary will be brief since Parkford does not, and cannot, challenge approval of the project in this appeal. It will suffice to note that in June 1987, after preparation of a final environmental impact report (EIR), the County filed a notice of determination indicating the County determined the project would not have a significant effect on the environment, an EIR was prepared, and mitigation measures were made a condition of the project's approval.

Over a decade later, in June 1998, an addendum to the final EIR was completed. The addendum was prepared due to modifications to the Treelake Village Master Plan increasing the minimum lot size and subdividing one 48-acre parcel within the development into four lots ranging from 8 to 13.5 acres, and further subdividing the 13.5-acre lot into 36 lots of various sizes. That September, the County filed a notice of determination indicating the County determined the modifications would not have a significant effect on the environment, an addendum to the previous EIR was prepared, and mitigation measures were made a condition of the project's approval.

The final subdivision map for Treelake Village was recorded in April 1999.

## *Initial Construction of Treelake Storage*

Turning to the construction of Treelake Storage, authorization of a commercial self-storage facility occurred through modification of the conditional use permit (CUP-1006) for the Treelake Village project. Condition 7 of CUP-1006 originally stated in relevant part: "The following uses are among those permitted within and adjacent to the high-voltage power line easements crossing the project property. Developer shall select from his list such facilities as in his judgment best serve the project and shall provide a schedule for the review and approval by [the County's development review

3

committee] . . . [¶] . . . [¶] (G) Recreational vehicle and boat storage for project residents only."

In January 1990, the County's development review committee (DRC) conceptually approved mini-storage as an appropriate use within the power line easement. Such usage was approved by the County Planning Department in November 1993. In the meantime, an amendment of CUP-1006 resulted in a renumbering of the conditions that caused condition 7 to become condition 8.

In April 1996, the DRC recommended approval of a requested modification of condition 8(G) to remove the residents-only restriction on use of the planned storage facilities. Attached to this recommendation was a CEQA exemption verification and a traffic study concluding, "traffic impacts of the proposed self-storage facility will be the same (negligible) whether it is available to Treelake Village residents only or if it is available to the general public." The following month, the County Planning Commission approved the requested modification of condition 8(G).

In February 1997, the DRC approved the design review for construction of Treelake Storage. The County Building Department issued a building permit that August. In September 1998, a building permit was issued for "Phase II" of the construction. After construction of Treelake Storage was completed, the building department issued a certificate of occupancy in November 1999.

### *Subsequent Expansion of Treelake Storage*

In April 2001, and again in August 2004, the DRC reviewed and approved two additional phases of construction to expand Treelake Storage's facilities. The County Building Department issued building permits for each phase of expansion. Certificates of occupancy were issued in 2002 and 2005, respectively, after construction of each expansion phase was completed.

Finally, in August 2016, the County approved plans for the most recent expansion of Treelake Storage. The building permit challenged in this case, issued in October 2016,

4

authorized construction of a 28,240-square-foot building and associated utilities.  After construction was completed, a certificate of occupancy was issued in October 2017.

### *The Present Lawsuit*

The present lawsuit was filed in February 2017.  Parkford's operative pleading, filed the following month, challenges the County's issuance of the building permit under CEQA and the Planning and Zoning Law and seeks a writ of mandate directing the County to set aside its approval of the building permit and all related approvals, prepare and certify an adequate EIR for the expansion project, and suspend all construction activity until the County has complied with CEQA and all other applicable laws.

In conjunction with its writ petition, Parkford requested a temporary restraining order (TRO) and preliminary injunction.  The trial court declined to issue a TRO, but issued an order to show cause on the request for preliminary injunction.  With respect to denying the TRO, the trial court noted, "construction of the subject project began September 2016, and is close to completion," and then explained that although a party seeking a TRO must demonstrate "irreparable harm or immediate danger if a temporary restraining order is not issued pending a hearing on a motion for preliminary injunction," Parkford "does not explain why a temporary restraining order is suddenly necessary, approximately six months after construction began."

Following a hearing on the request for preliminary injunction, held in April 2017, the trial court denied that interim relief as well, noting Parkford established neither a likelihood of prevailing on the merits nor that the balance of interim harm favored issuance of a preliminary injunction.  Because the trial court ultimately rejected Parkford's claims on the merits, for reasons we describe more fully later, we decline to set forth its preliminary assessment of these claims.  We do set forth the trial court's reasoning with respect to interim harm:  "The timing of construction is essential when considering this factor.  This is not a case where construction has yet to occur.  To the contrary, the storage facility is near completion.  [Citation.]  This includes completion of

5

grading; underground utilities; paving; concrete curb and gutter; underground waterlines; fire hydrants; concrete footings and slab; and framing. [Citation.] Respondents submit evidence establishing that a cessation of construction at this point would create a public safety risk since the storage buildings are not yet structurally sound and the fire sprinkler system has not yet been completed. [Citation.] This is compared to the limited harm to petitioners at this junction. To reiterate, construction of the storage facility was well underway by the time petitioner brought the current request, significantly diminishing any harm asserted by petitioner."

Following denial of Parkford's request for a preliminary injunction, the County and real parties in interest answered the writ petition. Hearing on the petition was set for March 2018.

Parkford's trial briefing argued: (1) CUP-1006 did not authorize construction of a large commercial storage facility and, in any event, expired in 2002; and (2) issuance of the challenged building permit was a discretionary act subject to the requirements of CEQA, and therefore the County was required to prepare an adequate EIR prior to issuing the permit. In response, real parties in interest, joined by the County, argued: (1) Parkford's challenge to the use of the site as a commercial mini-storage facility, a use authorized in 1996 when CUP-1006, condition 8(G) was modified, is time-barred; (2) issuance of the challenged building permit was ministerial, not discretionary, and therefore not subject to the requirements of CEQA; and (3) Parkford's claims became moot when construction of the Treelake Storage expansion was completed and a certificate of occupancy was issued in October 2017. In reply, Parkford again argued issuance of the challenged building permit was discretionary in nature and further argued: (1) there is no statute of limitations problem because Parkford was not challenging the 1996 modification of condition 8(G); and (2) Parkford's claims were not rendered moot by the completion of construction because the County could still "modify the project or

6

impose mitigation measures, or require that the property be restored" to its original condition.

In response to an argument raised for the first time at the hearing on the writ petition, the trial court requested supplemental briefing on the question of whether Parkford's second cause of action, asserting violation of the Planning and Zoning Law, was barred by the statute of limitations set forth in Government Code section 65753. Parkford argued that section did not apply. Real parties in interest, again joined by the County, acknowledged that specific section did not apply, but argued Parkford's second cause of action was nevertheless barred by the 90-day statute of limitations set forth in Government Code section 65009.

In April 2018, the trial court ruled on Parkford's first cause of action, concluding the County did not violate CEQA because issuance of the challenged building permit was a ministerial action. The trial court noted Parkford's assertion the action was discretionary was premised on its view that CUP-1006 was no longer valid. The trial court rejected this premise, noting the Placer County Code provides that a conditional use permit granted for a planned residential development does not expire, and instead runs with the land, where such a permit has been implemented through the recordation of the final subdivision map, as occurred in this case in 1999. Because CUP-1006 authorized use of the property for commercial storage, and because the Placer County Code "provides no discretionary standards in [the] issuance" of the building permit challenged in this case, Parkford did not rebut the general presumption that issuance of a building permit is ministerial and not subject to CEQA. Finally, the trial court declined to rule on Parkford's second cause of action because there was "no motion pending before the court with respect to [that] cause of action."

Thereafter, the County and real parties in interest moved for judgment on the pleadings with respect to the second cause of action, again arguing the claim was barred by the 90-day statute of limitations set forth in Government Code section 65009. In

7

response, Parkford did not dispute its writ petition was filed more than 90 days after issuance of the challenged building permit, but instead argued Government Code section 65009 "was not intended to apply to [a] building permit that was issued in violation of the applicable zoning."

The trial court granted the motion without leave to amend and thereafter entered judgment against Parkford on each cause of action. This appeal followed.

DISCUSSION

Real parties in interest, joined by the County, argue Parkford's claims are moot because "the mini-storage expansion is fully constructed and is up and running," and therefore "the relief requested by Parkford[,] i.e., a writ requiring the County to set aside the building permit, and ordering Real Parties to suspend all 'activity, construction, work, and/or development' until an EIR is prepared [citation][,] can no longer be effective." Parkford did not address mootness in its opening brief on appeal, perhaps understandably since the trial court did not rely on mootness in its ruling. However, Parkford also ignored mootness in its reply brief, after the issue was raised in the respondents' brief. For this reason, we begin our discussion by noting that although the burden of persuasion with respect to mootness is on the respondent (see *Smith v. State Savings & Loan Assn.* (1985) 175 Cal.App.3d 1092, 1100), the ultimate burden of demonstrating reversible error is always on the appellant. (*San Joaquin Raptor/Wildlife Rescue Center v. County of Stanislaus* (1996) 42 Cal.App.4th 608, 626; *Walling v. Kimball* (1941) 17 Cal.2d 364, 373.)

As we explain below, we are persuaded the completion of the Treelake Storage expansion has rendered moot Parkford's challenge to the building permit authorizing construction of the expansion. For obvious reasons, Parkford's appellate briefing has not persuaded us otherwise.

8

# I

## *General Mootness Principles*

"California courts will decide only justiciable controversies.  [Citations.]  The concept of justiciability is a tenet of common law jurisprudence and embodies '[t]he principle that courts will not entertain an action which is not founded on an actual controversy . . . .'  [Citations.]  Justiciability thus 'involves the intertwined criteria of ripeness and standing.  A controversy is "ripe" when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made.'  [Citation.]  But 'ripeness is not a static state' [citation], and a case that presents a true controversy at its inception becomes moot ' "if before decision it has, through act of the parties or other cause, occurring after the commencement of the action, lost that essential character" ' [citation]."  (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573 (*Wilson*).)  Stated differently, moot cases "are '[t]hose in which an actual controversy did exist but, by the passage of time or a change in circumstances, ceased to exist.'  [Citation.]"  (*Ibid.*)

"Because ' "the duty of . . . every . . . judicial tribunal . . . is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or . . . to declare principles or rules of law which cannot affect the matter in issue in the case before it[,] [i]t necessarily follows that when . . . an event occurs which renders it impossible for [the] court, if it should decide the case in favor of plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment . . . ." [Citations.]' [Citation.]  The pivotal question in determining if a case is moot is therefore whether the court can grant the plaintiff any effectual relief. [Citations.]  If events have made such relief impracticable, the controversy has become 'overripe' and is therefore moot.  [Citations.]  [¶] . . . When events render a case moot, the court, whether trial or appellate, should generally dismiss it.  [Citations.]"  (*Wilson*, *supra*, 191 Cal.App.4th at p. 1574; *Santa Monica Baykeeper v. City of Malibu* (2011) 193

9

Cal.App.4th 1538, 1547 (*Santa Monica Baykeeper*) [" 'appeal should be dismissed as moot when the occurrence of events renders it impossible for the appellate court to grant appellant any effective relief' "].)

## II

### *Analysis*

Real parties in interest, joined by the County, argue this case is analogous to *Wilson*, *supra*, 191 Cal.App.4th 1559, a reverse validation action including a CEQA challenge to a development project in which the Court of Appeal held the case became moot when the project was completed (*Wilson,* at p. 1576); they also distinguish this case from two decisions relied upon by Parkford in its trial briefing, *Bakersfield Citizens for Local Control v. City of Bakersfield* (2004) 124 Cal.App.4th 1184 (*Bakersfield Citizens*) and *Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880 (*Woodward Park*). As mentioned, Parkford does not provide this court with briefing on the mootness issue.

We agree *Wilson* is the most analogous authority. There, the City initially approved a redevelopment project following the required environmental review, drawing no challenge from the plaintiff. However, after the City approved a modification to the project and entered into an amended development agreement superseding the original agreement, the plaintiff sought invalidation of the new agreement arguing, among other things, that a new EIR should have been prepared for the modified project. (*Wilson*, *supra*, 191 Cal.App.4th at pp. 1563-1567.) Although the case went to trial in 2004, "for reasons not disclosed by the record" (*id*. at p. 1580), final arguments were not held until 2007. (*Id*. at pp. 1568-1569.) Rejecting the City's argument that the case should be dismissed as moot because the project had been completed in the meantime and the plaintiff had not sought an injunction to stop work on the project, the trial court ultimately entered judgment in favor of the plaintiff. (*Id*. at pp. 1569-1571.)

10

The Court of Appeal reversed, holding completion of the project rendered the plaintiff's challenge to the project's approval, including a CEQA claim, moot. (*Wilson*, *supra*, 191 Cal.App.4th at p. 1576.) The court explained: "California law has long recognized that the completion of a public works project moots challenges to the validity of the contracts under which the project was carried out. . . . [¶] A project's completion also moots requests to set aside or rescind resolutions authorizing the project. [Citation.] It also moots an action seeking to require preparation of an EIR for a particular project. [Citation.]" (*Id.* at pp. 1575-1576.)

In support of the latter proposition, the *Wilson* court relied on *Hixon v. County of Los Angeles* (1974) 38 Cal.App.3d 370 (*Hixon*), a case in which county residents sought a writ of mandate to compel the county to obtain an EIR in connection with a street improvement project involving removal of a substantial number of roadside trees and replacement of those trees with a greater number of younger trees that would take 25 to 30 years to attain the size of the their predecessors. The trial court declined to require preparation of an EIR for the project because the trees had already been removed and replaced and "no public benefit would be gained by requiring an EIR." (*Id*. at p. 377.) The Court of Appeal agreed, explaining: "The project is ended, the trees are cut down and the subject is now moot insofar as resort to a planning or informational document, which is what an EIR is." (*Id*. at p. 378.)

The *Wilson* court also distinguished one of the cases relied upon by Parkford in its trial briefing, *Woodward Park*, *supra*, 77 Cal.App.4th 880. In that case, a homeowners association challenged the city's approval of a car wash project arguing the city was required to obtain an EIR before approving the project. The trial court agreed and ordered preparation of the EIR. (*Id*. at pp. 881-882.) The city and the developer appealed, and the latter proceeded with construction of the car wash without preparing an EIR notwithstanding the trial court's order, completing construction while the case was pending on appeal. On appeal, the city argued the case became moot when the project

11

was completed. The Court of Appeal disagreed. Distinguishing *Hixon*, in which "the trees were *already cut down*; thus the original trees could not be returned," the court explained that ordering an EIR for the car wash project "can afford [the homeowners association] effective relief" because such an order "could result in modification of the project to mitigate adverse impacts or even removal of the project altogether." (*Woodward Park*, at pp. 888-889.) The court also noted the developer "proceeded with construction and completion of the project after [the homeowners association] filed its mandamus petition" and "despite the trial court's order mandating the preparation of an EIR," concluding: "It would hardly be sound public policy to allow a party to avoid CEQA by continuing with construction of a project in the face of litigation, delaying preparation of a court-ordered EIR pending appeal, and then arguing the case is moot because the project has been completed and is operating." (*Id*. at p. 889.)

Returning to *Wilson*, the court explained that unlike *Woodward Park*, construction of the modified project did not proceed in violation of a court order. (*Wilson*, *supra*, 191 Cal.App.4th at p. 1580.) Instead, "for reasons not disclosed by the record, resolution of the case was anything but prompt, and . . . it would be unreasonable to expect the City and the Developer simply to hold the Project in abeyance for five years as they awaited a final judgment in [the] action. Thus, contrary to [the plaintiff's] suggestion, there was no 'unseemly race to completion intended to moot [the plaintiff's] lawsuit.' [Citation.]" (*Id*. at pp. 1580-1581.) The court also explained the plaintiff was "partially responsible for its claims becoming moot" because it "failed to seek a stay of the Project's construction." (*Id*. at p. 1581.)

In this case, Parkford's lawsuit challenges the County's approval of a building project without preparation of an EIR. The lawsuit also alleges such approval resulted in a violation of the Planning and Zoning Law. However, as in *Wilson, supra,* 191 Cal.App.4th 1559, completion of the project rendered Parkford's challenge to the project's approval moot. While Parkford argued before the trial court that the County

12

could still "modify the project or impose mitigation measures, or require that the property be restored," it does not make this argument in its briefing on appeal. Moreover, although this quoted language was taken almost verbatim from *Woodward Park, supra,* 77 Cal.App.4th 880, the circumstances of this case are far different from that case. Unlike *Woodward Park*, and again like *Wilson*, construction of the Treelake Storage expansion did not proceed in violation of a court order. Instead, having operated Treelake Storage since 1999, and expanded the facility twice, in 2001 and again in 2004, all without any indication that the issuance of either the initial or expansion building permits triggered environmental review under CEQA or violated the Planning and Zoning Law, the real parties in interest relied on the 2016 building permit to begin construction of the facility's third expansion. Nothing in the record indicates they did so in bad faith or in an attempt to evade the requirements of CEQA or the Planning and Zoning Law.

Furthermore, while Parkford requested a TRO and preliminary injunction to halt construction of the expansion, as the trial court explained when denying preliminary injunctive relief, it did not do so until the project was nearly completed. Thus, similar to *Santa Monica Baykeeper, supra*, 193 Cal.App.4th 1538, another case in which the Court of Appeal held completion of a building project mooted a CEQA claim, "our case is analogous to *Wilson* . . . to the extent that [Parkford] failed to take steps to maintain the status quo pending resolution of its claims by seeking injunctive relief or a stay until . . . the project was nearly complete." (*Santa Monica Baykeeper,* at p. 1551.)

Finally, *Bakersfield Citizens, supra*, 124 Cal.App.4th 1184, relied upon by Parkford in its trial briefing, is also distinguishable because that case involved only a partial completion of the challenged building project and the Court of Appeal also relied on an exception to the mootness doctrine for "important issues of broad public interest that are likely to reoccur." (*Id*. at pp. 1203-1204.) Here, having failed to brief the

13

mootness issue in this appeal, Parkford has not even attempted to persuade this court that any of the issues raised in this appeal are not moot.

We conclude completion of the challenged expansion of Treelake Storage has rendered moot Parkford's challenge to the County's issuance of a building permit authorizing construction of the expansion.

## DISPOSITION

The appeal is dismissed.  Respondents Placer County et al. and Silversword Properties, LLC et al. shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


/s/
HOCH, J.


We concur:


/s/
HULL, Acting P. J.


/s/
BUTZ, J.*

---

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| PARKFORD OWNERS FOR A BETTER COMMUNITY, | C087824 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV0039094) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| COUNTY OF PLACER et al., | |
| Defendants and Respondents; | [NO CHANGE IN JUDGMENT] |
| SILVERSWORD PROPERTIES, LLC, et al., | |
| Real Parties in Interest and Respondents. | |

APPEAL from a judgment of the Superior Court of Placer County, Charles D. Wachob, Judge.  Dismissed.

Law Offices of Donald B. Mooney and Donald B. Mooney for Plaintiff and Appellant.

Clayton T. Cook, County Counsel, for Defendants and Respondents.

Remy Moose Manley, James G. Moose and Laura M. Harris for Real Parties in Interest and Respondents.

1

THE COURT:

The opinion in the above-entitled matter filed on August 26, 2020, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

FOR THE COURT:


 /s/
HULL, Acting P. J.


 /s/
HOCH, J.


 /s/
BUTZ, J.*

---

\* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.