Filed 10/6/23  Head v. Dolch CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RICHARD HEAD, as Trustee, etc. <br>     Plaintiff and Appellant, <br> v. <br> DEBRA J. DOLCH, <br>     Defendant and Respondent. | A165084 <br><br> (Marin County Super. Ct. <br> No. CIV2102573) |

The anti-SLAPP motion on appeal in this case relates to a professional fiduciary caught in the middle of a dispute between two sets of friends of Raymond Ross.[1]  Ross has a substantial estate, but now suffers from dementia and lacks capacity.

Back in 2016, Ross named his friend, appellant Dr. Richard Head, as the successor trustee of the Raymond W. Ross Living Trust (Trust).  But according to a different friend, Abraham Mertens, Ross

---

[1] California law bars strategic litigation against public participation, known as "SLAPP" lawsuits.  (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57 (*Equilon*).)  Special motions to strike SLAPP lawsuits, filed under Code of Civil Procedure section 425.16, are often called "anti-SLAPP" motions.  (*Equilon*, at p. 58.)  Unless otherwise indicated, the statutory references in this opinion are to the Code of Civil Procedure.

amended the Trust in April 2021 by removing Head and directing Mertens "to select a reputable, objective, third-party to handle my affairs." Mertens says he complied by finding a private professional fiduciary, respondent Debra Dolch, to serve as "sole trustee" to administer the Trust in May 2021. Head was unaware of Mertens' efforts or of Dolch's ostensible appointment.

In his capacity as Ross's conservator, Head filed a complaint against Mertens and Mertens' wife, Ivory Madison, in July 2021. Head alleges, among other things, that the couple committed financial elder abuse and exercised undue influence over Ross by taking a substantial sum of money from the Trust. According to Head, Mertens and Madison also procured the April 2021 amendment using undue influence, knowing that Ross had dementia and lacked capacity.

Central to this appeal, when Head finally learned that Dolch (the professional fiduciary) claimed to be Ross's successor trustee, Head amended his complaint to add Dolch as a party. Head claims Dolch aided and abetted financial elder abuse against Ross. He also seeks cancellation of the May 2021 instrument appointing Dolch as trustee. Dolch filed a special motion to strike these two causes of action under the anti-SLAPP statute. The trial court granted the motion in its entirety.

We reverse. Dolch failed to meet her burden to show that the core alleged activity upon which these claims are based—Dolch's

acceptance of her appointment as successor trustee—is activity protected under the anti-SLAPP statute.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Living Trust*

We begin with a brief description of the underlying trust and the parties in this action as background. In the aftermath of his husband's death, Ross executed an amendment and restatement of the Trust in 2016. It stated that, in the event of Ross's death, resignation, incapacity, or failure to serve as the original trustee, Head "shall serve as Successor Trustee of all Trusts hereunder." According to Head, he has been friends with Ross since 1980.

Head stated that he began to notice Ross's cognitive decline in 2017 and it continued to worsen. In late 2020 and early 2021, the decline allegedly became pronounced. Testing in March 2021 revealed "significant cognitive issues." Head arranged for Ross to move into an assisted living facility. According to Head, he became successor trustee of the Trust on May 18, 2021, after Ross's physician "confirmed" his cognitive decline and dementia diagnosis relating to Alzheimer's disease.

Mertens and Madison are also friends of Ross. With their help, Ross purportedly dictated and signed a one-page document in April 2021. It began: "I, Raymond 'Jeffrey' Ross, being of sound mind, but this being too long to handwrite, have asked my friend, Ivory Madison,

---

[2] Dolch asks us to dismiss the appeal on the basis of mootness or lack of standing because, in the time since Head filed the appeal, the probate court suspended Head as conservator and appointed a new temporary conservator. We deny the motion for the reasons described below.

to type up my wishes as I dictate them, including revoking any Power of Attorney enjoyed by Richard Head, and to make modifications to my Trust."

The document said that Ross wished to remain at his home in San Francisco, but believed Head was planning to have Ross "declared incompetent" and then "put [him] in a nursing home in Marin." It stated: "If there comes a time when I am no longer able to make my own decisions, I do not want any of my beneficiaries to be granted any Power of Attorney nor to become executor of the Trust, instead, I'd like Abraham Mertens to select a reputable, objective, third-party to handle my affairs. [¶] I hereby remove Richard as executor of my Trust." According to the document, Ross did not want Head "to know about these changes yet," because he "would like to remain on friendly terms with him and his wife."

Dolch is a private professional fiduciary. According to Dolch, Mertens first contacted her about serving as trustee of the Trust in May 2021. Mertens and Madison told Dolch about complaints and concerns Ross (and others) had about Head. Dolch reviewed the April 2021 document, as well as other estate planning documents that purportedly contained handwritten changes by Ross (including striking out Head's name in a power of attorney document) made at the same time. Dolch later declared: "Based on my interactions with Mertens and Madison and my review of the April 4, 2021 documents, it appeared to me that Mertens and Madison had genuine concern for Ross and his well-being and that Ross would benefit greatly from a professional fiduciary serving as the trustee of his Trust." Dolch told Mertens that she would accept the trusteeship if appointed. On May

4

26, 2021 (eight days after Head says he officially became successor trustee), Mertens executed a document appointing Dolch as trustee. Dolch accepted the appointment by signing the document that same day. Head was unaware of any modification of the Trust or the appointment of Dolch.

A few days later, Head instituted conservatorship proceedings of the person and estate of Ross in the Marin County Superior Court. The probate court appointed Head as conservator in September 2021. The conservatorship order also stated: "Any and all durable powers of attorney, or other powers of attorney for asset management or for health care decision-making, made or given by Raymond W. Ross, to any other person after 2016 are suspended."

## B. *Head's Civil Action Against Mertens and Madison for Financial Elder Abuse and Related Claims*

Head filed this civil action against Mertens and Madison on July 8, 2021 in his capacity as conservator of Ross's person and estate. He asserted claims for financial elder abuse and aiding and abetting in the commission of financial elder abuse. Among other things, Head alleged that Ross had loaned Mertens and Madison $450,000, but they had refused to pay it back and asserted that Ross had gifted that money to them.

Dolch says she learned of this litigation in October 2021. She contacted her counsel, who advised her "to take whatever legal action was necessary to obtain instructions from the court and/or confirm my status as trustee so I could obtain Ross's financial records and prepare an accounting." Dolch's counsel specially appeared on her behalf at a November 16, 2021 hearing, where the trial court noted there were "questions as to who is the successor trustee" of the Trust.

5

Counsel for Head and Dolch exchanged multiple communications after that hearing. On November 17, 2022, for example, Head's counsel sent a letter stating that Dolch's "proposed involvement in the conservatorship and trust can only be made in reliance on documents [*sic*] were drafted by Mr. Mertens in an effort to supplant his own testamentary wishes for Mr. Ross's" and "[a]ttempting to make these defective documents legally effective in order to deprive Mr. Ross of his right to make his testamentary wishes free of undue influence and fraud would be assisting in the taking described in Welfare and Institutions Code section 15610.30. We sincerely hope that Ms. Dolch does not intend to engage in that sort of conduct because if she does, she will be named as an aider and abetter in the commission of elder financial abuse."

## C. *Head's Probate Petition*

On November 23, 2021, Head filed a probate petition to "confirm" his position as successor trustee and power of attorney.[3] Head alleged that the April 2021 document purporting to amend the Trust was void, and the subsequent " 'appointment' " of Dolch as trustee was thereby invalidated.

---

[3] Dolch requested judicial notice of the probate petition, response to the petition, and dockets of the probate proceeding and this civil action. We deferred ruling on the requests until the merits of the appeal. (See *People v. Preslie* (1977) 70 Cal.App.3d 486, 493–494.) We now grant the request in full. (Evid. Code, § 452, subd. (d) [permitting judicial notice of court records]; *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 [reviewing court may take judicial notice of matters not before the trial, but need not do so].)

**D.** *Head's Second Amended Complaint Naming Dolch*

In January 2022, Head filed the operative second amended complaint in the civil action naming Dolch as a defendant on the 9th (aiding and abetting in the commission of financial elder abuse) and 13th (cancellation of written instrument) causes of action. On the 9th cause of action for financial elder abuse, Head alleged that Dolch aided and abetted in taking away Ross's testamentary rights "by virtue of" the April 2021 document "and her appointment as successor trustee of [the Trust] under the Appointment of Trustee and Power of Attorney for a wrongful use or with intend [*sic*] to defraud, and/or through the use of undue influence over Mr. Ross and in bad faith." Head alleged that Dolch "knew" that Mertens and Madison's conduct in procuring the April 2021 amendment was a "breach of duty," and that Dolch was "providing substantial assistance or encouragement" to Madison and Mertens by "acting" under the appointment and "claiming" she is now the successor trustee.

On the 13th cause of action for cancellation, Head alleged that the May 2021 appointment of Dolch as successor trustee was void or voidable because it was obtained through fraud, financial elder abuse, and undue influence. Head further alleged that Dolch's appointment was invalid because the conservatorship order had suspended all powers of attorney made after 2016, and accordingly Mertens had no authority to make the appointment.

**E.** *Dolch's Anti-SLAPP Motion*

Dolch filed an anti-SLAPP motion on the 9th and 13th causes of action. The trial court granted the motion in its entirety. It concluded that Dolch had met her burden to show the claims against her were

based upon activity protected by the anti-SLAPP statute. The court reasoned that the "gravamen" of Head's allegations against Dolch "stem from her engagement in the judicial process by appearing, through her attorney, at a hearing in this matter to assert her appointment as successor trustee and fiduciary for the Ross Trust. Any communications made by her in preparation or anticipation of asserting her status as successor trustee prior to her appearance at the ex parte hearing in November 2021, are likewise protected." The trial court then concluded that Head failed to meet his burden to show a probability of prevailing on the merits of these claims.

On April 14, 2022, the trial court issued an order striking the 9th and 13th causes of action against Dolch and entering judgment in her favor. The order also stated: "Dolch is entitled to a mandatory award of her reasonable attorneys' fees and costs pursuant to Code of Civil Procedure section 425.16(c) against Plaintiff and, upon further motion, the Court will consider the amount of the award and whether it has authority to order Plaintiff, in his individual capacity, to pay Dolch's reasonable fees and costs awarded." Head filed a timely notice of appeal from the order.

### F. *Consolidation of Probate Petition with Civil Action*

On April 25, 2022, shortly after the trial court's anti-SLAPP ruling, the court consolidated Head's probate petition (to confirm his status as successor trustee and power of attorney) with this civil action.

### G. *Order Suspending Head as Conservator*

On July 14, 2023, several months after the parties had completed their appellate briefing in this matter, the probate court entered an order suspending Head as conservator of Ross's person and estate

8

pending an evidentiary hearing on removal set for February 2024. The probate court found that the suspension was in the best interests of Ross. The probate court identified several reasons for this finding, including that the "extreme, unnecessary and unduly costly" litigation of the conservatorship has resulted in "significant financial loss" to Ross, and that there is "some evidence to suggest that Dr. Head is not acting in the best interest of Mr. Ross" such that "[i]n an abundance of caution, removing Dr. Head (and thereby also removing the animosity between the parties) is in Mr. Ross's best interest." The probate court appointed private professional fiduciary Rebecca Guyette as temporary conservator.

## H. *Dolch's Motion to Dismiss the Appeal*

On August 22, 2023, Dolch moved to dismiss this appeal. Dolch argues that (1) Head has lost standing because his conservator status has been suspended; and (2) the appeal as to Head's 13th cause of action is moot because that claim is duplicative of his pending probate petition. On August 29, 2023, temporary conservator Guyette filed a one-paragraph response advising this court "that she supports Dolch's motion to dismiss the appeal" as "[p]roceeding with the appeal is not in the best interests of Raymond W. Ross, conservatee."

On September 8, 2023, Head filed an opposition to the motion. Head argues that his suspension does not deprive him of standing because he has not been removed as conservator, and is "aggrieved for the simple reason that [Dolch] has filed a pending motion for attorneys' fees and costs" under the anti-SLAPP statute, and "the fee motion makes clear that [Dolch] intends to pursue Dr. Head as conservator for

9

fees." Head also argues that the appeal is not moot because it would determine the "viability" of Dolch's pending fee motion.

The opposition attached a copy of Dolch's motion, file-stamped on June 24, 2022. The motion requests that the trial court "award her attorneys' fees and costs in connection with her successful anti-SLAPP motion in the total amount of not less than $68,594.19." It contends that "the judgment in Ms. Dolch's favor, including any amended judgment, will become a liability of Mr. Ross, his conservatorship, and his living trust, and Dr. Head (or any successor fiduciary) will be required to satisfy the judgment from either or both estates." It also cites case law and statutes that Dolch argues "provide the [trial court] with ample authority to, at the very least, require Dr. Head to reimburse Mr. Ross's assets in satisfaction of the judgment in Ms. Dolch's favor."

## DISCUSSION

Head argues that the trial court erred in granting Dolch's special motion to strike the 9th and 13th causes of action. Before turning to this ruling, we address Dolch's arguments on appealability.

### I. Appealability

Dolch's motion to dismiss raises two issues of appealability. First, Dolch argues that Head has lost standing because his conservator status has been suspended. Head disagrees, citing the non-final nature of his suspension and Dolch's pending motion for at least $68,594.19 in attorney fees and costs that expressly contemplates any award to be a "liability" for Ross and his conservatorship, as well

10

as a potential liability for Head personally.  At oral argument, Dolch's counsel responded that these fees are "irrelevant" to the instant appeal.

We disagree.  Head took this appeal from the trial court's anti-SLAPP order.  That order explicitly provides that Dolch was "entitled to a mandatory award of her reasonable attorneys' fees and costs" under the anti-SLAPP statute.  (§ 425.16, subd. (c)(1) [providing that "a prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs"].)  The order also provides that the trial court would consider not only the amount of the award, but "whether it has the authority to order [Head], in his individual capacity, to pay Dolch's reasonable fees and costs awarded." Both Ross's estate and Head himself may be impacted by a fee award in connection with the anti-SLAPP order.  Given the scope of the order and Dolch's pending fee motion, we conclude that Head is sufficiently "aggrieved" for standing purposes.  (§ 902.)

Second, Dolch argues that the appeal as to Head's 13th cause of action should be dismissed as moot because the claim seeks relief that is duplicative of relief requested in his pending probate petition, which is now consolidated with this civil action.  Again, we disagree.  "A case is moot when any ruling by this court can have no practical impact or provide the parties effectual relief." (*Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880, 888.)  A ruling on appeal will have a practical and direct impact on Dolch's ability to seek fees and costs.  (§ 425.16, subd. (c)(1).)  Having rejected these arguments, we turn to the merits of the appeal of the anti-SLAPP order.

11

## II. Anti-SLAPP Ruling

The anti-SLAPP statute is "designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884.) Under this statute, a defendant may file a special motion to strike claims "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

We review the grant of an anti-SLAPP motion de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.) Resolution of such a motion requires the court to engage in the now familiar two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." (*Equilon*, *supra*, 29 Cal.4th at p. 67.) If the court finds the claim arises out of protected activity in the first step, "it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Ibid.*)

We ask on the first step whether Head's claims against Dolch arise from activity "protected" by the anti-SLAPP statute. (*Equilon*, *supra*, 29 Cal.4th at p. 67.) Section 425.16, subdivision (e) protects, in relevant part, "(1) any written or oral statement or writing made before a . . . judicial proceeding," and "(2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body[.]" Dolch bears the burden "to identify what acts

12

each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1011.) We address the 9th and 13th causes of action asserted against Dolch in turn.

### A. The "Aiding and Abetting" Financial Elder Abuse Cause of Action

On the 9th cause of action, Head alleged that Dolch aided and abetted the commission of financial elder abuse against Ross. California law defines " '[f]inancial abuse' of an elder or dependent adult" to include when a person "[a]ssists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." (Welf. & Inst. Code, § 15610.30, subd. (a)(2).)

The second amended complaint is not a picture of clarity. At oral argument, counsel for Head represented that the 9th cause of action was based on one injury-producing action by Dolch: accepting the successor trustee appointment.

"In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89; see also *Park v. Nazari* (2023) 93 Cal.App.5th 1099, 1108 [movant must " 'identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute' "].) We must "respect the distinction between activities that form the basis for a claim and those that merely lead to the liability-creating activity or provide evidentiary support for the claim." (*Park v. Board of Trustees of California State University*, *supra*, 2 Cal.5th at p. 1064.) "If the core

13

injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute." (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272 (*Hylton*).)

Here, the 9th cause of action alleged that Dolch aided and abetted in taking away Ross's testamentary rights "by virtue of" the April 2021 document and her appointment as successor trustee. While we express no opinion on the merits of Head's theory of Dolch's liability for financial elder abuse, Dolch's acceptance of this appointment was the alleged "core injury-producing conduct" upon which Head premised his 9th cause of action. (*Hylton*, *supra*, 177 Cal.App.4th at p. 1272.)

Dolch's reference to the communications between counsel after her special appearance does not compel a contrary conclusion. It is true that a trial court "is not limited to examining the allegations of the complaint alone but rather considers the pleadings and the factual material submitted in connection with the special motion to strike." (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394.) Here, Head's counsel sought to deter any "reliance" on the invalid April 2021 amendment and May 2021 appointment. Such communications support the view that the "core injury-producing conduct" action was the appointment itself. (*Hylton*, *supra*, 177 Cal.App.4th at p. 1272.) Any efforts by counsel to discourage Dolch's attempts to make those "defective documents legally effective" went to the manner in which this core injury-producing conduct would be ultimately carried out. (See *Gaynor v. Bulen* (2018) 19 Cal.App.5th 864, 879 [allegation that the trustee wasted funds on probate litigation was not a separate claim but was

14

the manner in which trustee implemented allegedly wrongful plan to alter trust].)

Having determined that Dolch's acceptance of the appointment was the alleged core injury-producing conduct, we must decide whether Dolch met her burden to show this conduct is protected under the anti-SLAPP statute. We conclude she did not.

Dolch declared that she accepted the appointment on May 26, 2021. The document states: "I, Debra J. Dolch, hereby accept this appointment as Trustee of the Restated Raymond W. Ross Living Trust and the Power of Attorney over any decisions regarding Jeffrey's finances, healthcare, and life decisions." She does not argue, nor does the document suggest, that any petitioning activity was required to execute or effectuate the appointment. She did not immediately seek to confirm the appointment via any filing with the court. Instead, she waited five months before making a special appearance in this action based on legal advice "to obtain instructions from the court" and/or "confirm" her status as trustee.

Nor are we persuaded by the suggestion that Dolch's acceptance of the appointment was "in preparation or anticipation of" her involvement in this litigation. Pre-litigation conduct may be deemed petitioning activity protected by the anti-SLAPP statute if it is "made 'in anticipation of litigation "contemplated in good faith and under serious consideration[.]" ' " (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [communications " 'preparatory to or in anticipation of the bringing of an action' " are protected by § 425.16].) Dolch, however, has not shown that litigation was contemplated in good

15

faith or under serious consideration when she accepted the appointment in May 2021. (*Neville*, at p. 1268.) On the contrary, she declared that she contacted her attorneys in October 2021, based on information she had "gathered and observed" since accepting the appointment five months prior.

## B. Cancellation Cause of Action

On the 13th cause of action, Head alleged that Dolch's appointment was void or voidable because it was obtained through fraud, financial elder abuse, and undue influence. He also alleged that the appointment was invalid because the conservatorship order had suspended all powers of attorney made after 2016, and accordingly voided any authority Mertens had to make the appointment. Accordingly, the core injury-producing conduct was conduct by Mertens (and Madison) in obtaining the appointment, not any conduct by Dolch. Even if it also included Dolch's acceptance of the appointment, Dolch failed in her burden to show that such conduct is activity protected under the anti-SLAPP statute as described above.

In sum, we conclude that the trial court erred in its finding on the first step of the anti-SLAPP analysis. Given this conclusion, we need not and do not reach the second step of the anti-SLAPP analysis.[4] The trial court erred in granting Dolch's special motion to strike the 9th and 13th causes of action against her.

---

[4] Having not reached this second step of the anti-SLAPP analysis, we need not and do not address any of the parties' arguments regarding the merits of the 9th or 13th causes of action.

16

**DISPOSITION**

Dolch's motion to dismiss the appeal is denied. The trial court's April 14, 2022 order is reversed. Head is entitled to his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

_____
Markman, J.*

We concur:

_____
Stewart, P.J.

_____
Richman, J.

*Head, as Trustee, etc. v. Dolch* (A165084)

      * Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.